This is an appeal from a determination of dependency and temporary disposition of children.
 Sara Holzschuh, age eleven; Christopher Holzschuh, age nine; and Michelle Heup, age nine, are children of William and Janese Heup. Christopher was removed from the home of his mother by the Alabama Department of Human Resources (DHR) in January 1987 because it was reported that he was being physically abused by his mother and stepfather. Sara and Michelle were also removed from the home in January 1987 upon allegations that Sara was being sexually abused by her stepfather, William Heup.
 Following detention hearings, temporary custody of the three minors was given to DHR. After a disposition hearing in February 1987, the court determined the three children to be dependent. Temporary custody of the children was vested in DHR, with a review of the case in six months. The parents appeal.
 In their first issue the parents contend that the trial court's determination was not supported by clear and convincing evidence and, thus, that their parental rights cannot be terminated. This issue assumes a fact which has not occurred. The trial court did not terminate their parental rights under § 26-18-7, Ala. Code (1975) (1986 Repl. Vol.). There was only a determination of dependency accompanied by a custodial order placing custody in DHR under § 12-15-71(a)(3), Ala. Code (1975) (1986 Repl.Vol.). There must be clear and convincing evidence to support a finding by the court that a child is dependent, § 12-15-65(e), Ala. Code (1975) (1986 Repl. Vol.); therefore, we will address that issue.
 The term "dependent child" is defined in § 12-15-1(10), Ala. Code (1975) (1986 Repl. Vol.). This court has previously held that the juvenile court has the authority to look at the totality of the circumstances when determining whether a child is dependent. Martin v. State, 502 So.2d 769 (Ala.Civ.App. 1987); Carter v. Jefferson County Department of Pensions Security, 496 So.2d 66 (Ala.Civ.App. 1986).
 The record reveals that in July 1986 William and Janese Heup moved to Alabama from Wisconsin where they were known to social service agencies in several Wisconsin counties. The family's initial contact with DHR in Alabama occurred in September 1986 when DHR investigated reports expressing concern over the family's living conditions.
 Between September 1986 and January 1987, DHR investigated several complaints regarding the Heup family. In addition to the report concerning the family's living conditions, DHR investigated three reports that Christopher was being physically abused and two reports that Sara was being sexually abused by William Heup, their stepfather.
The DHR worker assigned to the case testified that she observed Christopher with two black eyes in a three-month period. In the course of one of the investigations into allegations of physical abuse of Christopher, multiple bruises were observed on his legs, buttocks, and forearm and down his spinal column. Christopher was removed from the home in January *Page 297 
1987 after telling his teacher that his mother kicked him and yelled at him and that his dad (meaning his stepfather) would tie him up with a yellow rope. He also related the story to the DHR worker and demonstrated what had occurred, using the anatomical dolls.
 Dr. Bonnie Atkinson, a clinical developmental psychologist with Riverbend Mental Health Center, testified at the hearing. She described Christopher's behavior during the testing session, discussed the various tests and results, and stated "that Christopher's behavior is typical and characteristic of children who have been either physically and/or emotionally abused, [and] that his dysfunction is characteristic of children who have been . . . identified as being abused."
 Dr. Karen Landers, a pediatrician employed by the Northwest Alabama Regional Health Department, examined Christopher on February 2, 1987. Dr. Landers testified that there were multiple yellow-colored bruises over his back, chest, and right arm and that the location of these bruises was not compatible with normal bruising from a child's play activity.
 DHR also investigated two reports alleging sexual abuse of Sara by William Heup, her stepfather. The medical examination of Sara after the first complaint in the fall of 1986 revealed no evidence to document sexual abuse, but the doctor expressed some concern about the physical findings. The second allegation of sexual abuse was received while investigating the allegations of physical abuse of Christopher in January 1987.
 The DHR worker testified that both Sara and Michelle told her they had been instructed not to talk with a social worker. The mother confirmed that the children had been instructed not to talk with anyone from DHR unless their parents were present.
 During the detention hearing for Sara and Michelle, the wife also confirmed that William Heup had received sexual offender rehabilitation treatment in Wisconsin after being accused of sexually abusing a stepdaughter from a previous marriage. The DHR case-worker testified during the detention hearing for Christopher that records received from Wisconsin contained an investigation into allegations that William Heup had been observed fondling Sara while in the backyard. The stepfather admitted at the final hearing that he had attended a sexual offender rehabilitation program for several weeks while residing in Wisconsin.
 Dr. Landers also performed medical examinations of Sara and Michelle in February 1987. She had previously examined all three children in September 1986. Dr. Landers testified that Michelle's medical examination revealed that her hymenal opening had increased in size from three millimeters in September to eight millimeters in February and that this increase in size is not consistent with the child's growth during the same period. Dr. Landers characterized this significant increase as an abnormality which should be investigated further.
 In regard to the medical examination of Sara, Dr. Landers testified that she had a history of blood in her urine and that, during the September examination, she noted a slight redness around the opening to the vagina and that the opening of the hymen was larger than normally seen in a child of Sara's age. Dr. Landers was unable to perform any additional examination in September because Sara refused to allow it.
 Dr. Landers testified that, during the February examination, Sara would cry at intervals and then be very affectionate and that she spontaneously informed Dr. Landers that no one had touched her down there and that it "hurt to be touched down there." Dr. Landers stated that she was unable to examine Sara adequately, as far as the genital and urinary examination, because she would not lie still and cooperate.
 Dr. Landers also testified that complaints of urination symptoms and behavioral mood swings, such as those evidenced by Sara, along with the physical findings of the September medical examination, while not conclusive, are indicative of possible sexual abuse. *Page 298 
 Glenn Roberts testified at both the detention hearing concerning Sara and Michelle and at the final hearing. Roberts stayed with the Heup family for about a week in December 1986. Roberts testified that during that period he observed Heup with Sara and that Heup placed his hand "down there on her privates" and that his hand was "down between her legs."
 Dr. Atkinson also performed psychological testing on Sara and Michelle. She testified that Michelle is the healthiest of the three, while Sara is clearly the most disturbed of the children. She said that Michelle was very guarded during the testing interview, said very little, and told her that she did not want to get into trouble.
 Dr. Atkinson stated that, when she asked Sara to draw a picture of her family, she drew a picture of her foster family. When asked if she had another family, she said that she did, but that she did not want to talk about them and she did not want to get them into trouble. Dr. Atkinson stated that Sara was severely disturbed and needed psychotherapy.
 The trial court observed the witnesses and interviewed the three children involved in this case. The trial court was in a much better position to make a determination as to whether these children were dependent than is this court. From our review of the record, the totality of the circumstances supports a finding of dependency in this case. See Martin, 502 So.2d 769.
 In their second issue the parents contend that the trial court erred in allowing the testimony regarding William Heup's receiving sexual offender treatment in Wisconsin.
 The conduct of the detention hearing is governed by § 12-15-60, Ala. Code (1975) (1986 Repl.Vol.). Section 12-15-60(d) provides that "[a]ll relevant and material evidence helpful in determining the need for detention or shelter care may be admitted by the court even though not competent in a hearing on the petition."
 The conduct of adjudicatory and dispositional hearings is governed by § 12-15-65, Ala. Code (1975) (1986 Repl.Vol.). This court has previously recognized that there is a distinction between evidence admissible in an adjudicatory
hearing ("clear and convincing evidence, competent, material and relevant in nature," § 12-15-65(e)) and evidence admissible in a dispositional hearing ("all relevant and material evidence . . . may be relied upon to the extent of its probative value, even though not competent in a hearing on the petition," § 12-15-65(f)). Rose v. Spencer, 491 So.2d 257 (Ala.Civ.App. 1986); Gentry v. State Department of Pensions Security, 462 So.2d 929 (Ala.Civ.App. 1984).
 The testimony elicited from the DHR caseworker and from the mother concerning the sexual offender treatment of William Heup occurred during the detention hearings. Such evidence may be admitted in a detention hearing. Ala. Code (1975), § 12-15-60(d). The only testimony presented at the adjudicatory and dispositional hearing in February 1987 regarding this subject was from Heup himself. Such evidence was admissible for the purpose of showing fitness as a parent and as possible scienter in the sexual abuse accusation of the stepfather. Eslava v. State, 473 So.2d 1143 (Ala.Crim.App. 1985); Howton v. State, 391 So.2d 147 (Ala.Crim.App. 1980). It is further admissible as material and relative to the question of disposition. Whiddon v. State, 53 Ala. App. 280, 299 So.2d 326
(Ala.Crim.App. 1973). Consequently, we find no error in allowing such evidence.
 In their third issue the parents argue that the trial court erred in denying their motion for psychological and medical evaluations of the children, independent of those initiated by DHR, and that the trial court's blanket denial of visitation with the children is unfair and is unsupported by the evidence.
Our review of the record reveals that the trial court denied the parents' motion for psychological and medical evaluations after hearing the testimony of Dr. Landers and Dr. Atkinson and determining that the testimony of both doctors was totally objective and totally credible. The grant or *Page 299 
denial of a motion for a second evaluation is within the discretion of the trial court. Minchew v. Mobile County Department of Human Resources, 504 So.2d 310 (Ala.Civ.App. 1987). We find no abuse of this discretion here.
 Regarding the parents' visitation rights, we find no blanket denial of such rights. The trial judge stated at the conclusion of the hearing that visitation would depend upon what the treating psychologist or counselor recommends and that the exact terms of visitation would have to be worked out based upon those recommendations. After the court makes a determination that a child is dependent, the court is given the discretion to determine the visitation rights between parent and child. Minchew, 504 So.2d 310. The court's discretion has been given broad interpretation with its only parameter being the welfare and best interests of the child. Minchew, 504 So.2d 310. Again, we find no abuse of discretion.
This case is affirmed.
 The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975. This opinion is hereby adopted as that of the court.
AFFIRMED.
All Judges concur.