THOMPSON, Presiding Judge.
J.P. (“the father”) appeals from a judgment of the Calhoun Juvenile Court (“the trial court”) awarding custody of his infant son, A.P. (“the child”), to S.S. and C.S., the child’s maternal aunt and uncle (hereinafter “the aunt and uncle”).
M.S. (“the mother”) and the father were never married. The child was born on May 15, 2006. The child remained in the hospital for approximately one month fol *594 lowing his birth, after which the mother took the child to her home. The record indicates that the Calhoun County Department of Human Resources (“DHR”) became involved in monitoring the mother and the child shortly after the child was born because the mother was on methadone and had tested positive for marijuana at the time of the child’s birth.
In August 2006, the mother contacted the aunt and uncle and requested that the child be placed in the aunt and uncle’s care. The aunt and uncle took the child into their home at that time. The mother testified that she notified DHR of the fact that she had asked the aunt and uncle to take the child.
On October 24, 2006, DHR instituted in the trial court proceedings in which it sought to have the child declared dependent, pursuant to § 12-15-1(10), Ala.Code. 1975. On October 26, 2006, the trial court entered an order in which it adjudicated the child to be dependent and transferred custody of the child to DHR. That order indicated that the trial court had heard evidence at a shelter-care hearing and that, at that hearing, the mother and the father had each consented to the declaration of dependency. Although DHR had legal custody of the child as a result of the October 26, 2006, order, it allowed the child to remain in the home of the aunt and uncle as a relative placement for the child. The child has remained in the custody of DHR and in the home of the aunt and uncle throughout the pendency of this matter.
On March 16, 2007, the aunt and uncle initiated the present case by filing a petition to intervene in the dependency action and a petition seeking custody of the child. On that same day, the trial court granted the aunt and uncle’s petition to intervene in the action. The trial court also appointed a guardian ad litem for the child.
An April 5, 2007, order entered by the trial court shortly after the aunt and uncle filed their petitions indicates that the court had conducted a review hearing. See C.L. v. D.H., 916 So.2d 622, 625 (Ala.Civ.App.2005) (noting that, in that case, as “in most dependency cases,” the matter was periodically reviewed by the trial court). The order noted that the aunt and uncle had intervened in the action, that efforts to reunite the parents and the child had failed, and that the permanency plan for the child was either “relative placement” or “relative custody.” In that order, the trial court ordered that custody of the child remain with DHR. No appeal was taken from that order. See C.L. v. D.H., supra (discussing precedent holding that dependency orders are appealable).
The trial court held a hearing on June 6, 2007, on the aunt and uncle’s petition for custody of the child. The relevant facts presented at that hearing are as follows. The mother testified that she contacted the aunt and uncle in approximately August 2006 concerning the child. The mother explained that she told the aunt and uncle that she would be unable to provide for the child and that she wanted the aunt and uncle to have custody of the child because she knew that they could provide for him. Describing the child’s relationship with the aunt and uncle, the mother stated at the June 6, 2007, hearing: “That’s [sic] his mom and dad.”
The mother testified that the father had acted violently toward her on several occasions. She stated that one time the father had pushed her head through a wall at the house in which they were living. The mother explained that on another occasion the father broke her arm by grabbing it with both hands and twisting, resulting in it being “snapped in two.” The mother stated that the break in her arm required surgery to repair. The mother also testi *595 fied that the father frequently pushed and “slammed” her into walls. The mother stated that she and the father had used various illegal or illegally obtained drugs together, including marijuana, benzodiaze-pines, pain medication, and heroin.
The father admitted that he had used various illegal or illegally obtained drugs, such as marijuana and prescription pain medication, in the past, but he stated that he had not used any illegal drugs since March 2006. The father also claimed that he had not engaged in any domestic violence since 2004.
The father conceded that, in December 2006, he told DHR he was willing to let the aunt and uncle have custody of the child, provided that he could have visitation with the child. However, he later changed his mind. The father testified at the June 6, 2007, hearing that he objected to the aunt and uncle’s receiving custody of the child at that time because, in his opinion, DHR had not yet “given [him] a chance” to regain custody of the child. The father stated that he was disabled due to back injuries sustained or aggravated in a traffic accident that had occurred on March 7, 2007. The father admitted that, due to his injuries, he is unable to sufficiently care for the child on his own, but he stated that he would have sufficient help from his family and his live-in girlfriend, E.R. The father stated that he was unemployed and that, at the time of the hearing, he had only worked five days in 2007 due to difficulty in finding a job and as a result of his injuries from the March 7, 2007, accident. He testified that the last time he had sufficient income to support himself and the child without aid from others was November 2006. The father stated that he would soon begin receiving Social Security disability benefits because of his injuries and that those benefits would total approximately $1,200 per month. The father claimed that his Social Security disability benefits, combined with the money earned by E.R. at her job and support from his family, would give him sufficient financial resources to support the child.
Fred Mays, a counselor licensed by the State of Alabama who owns and operates Mays Counseling in Anniston, testified at the hearing. Mays stated that he had personally conducted regular counseling sessions with the father. Mays’s treatment notes, which were admitted into evidence, indicated that those counseling sessions dated back to at least September 11, 2006. Mays and his staff also supervised DHR-authorized visits that the father attended with the child after the child was adjudicated dependent on October 26, 2006. Mays explained that the father had confessed in counseling sessions to the use of “crack” cocaine, marijuana, methamphetamine, and other illegal or illegally obtained drugs during the time he was living with the mother but before the child’s birth. Mays stated that during “a few” counseling sessions, one of which occurred ■ in November 2006, the father’s speech had been slurred. Mays stated that the father explained at least one of those occurrences as being attributable to his taking Valium prescribed by a doctor. Mays also stated that, given the father’s substance-abuse history, he was concerned that the father was taking that medication.
The father told Mays that he had shoved the mother a few times and that he had been arrested for domestic violence on at least one occasion. Mays stated that he had been providing anger-management counseling to the father. At a counseling session conducted on December 7, 2006, the father informed Mays that he was unemployed and did not have a vehicle. Mays also stated that the father told him at that session that he was in favor of giving custody of the child to the aunt and *596 uncle and that, at that time, the father was excited about a proposed standard schedule of visitation with the child.
Mays explained that the father had made significant progress in his visits with the child but that he had “a good ways to go” regarding his mental-health issues. Mays stated that the father had “always been cooperative” during his counseling sessions but that the father had had an inappropriate outburst at an individualized service plan (“ISP”) meeting conducted with DHR in February 2007. Mays concluded that, based on his observations of the father, he did not think that an award of custody to the father would be appropriate.[1]
Jennifer Edwards, a DHR employee and a former employee of Mays Counseling, testified that she supervised some of the visits that the father had had with the child that were conducted at Mays Counseling. Edwards testified that she was concerned about the father’s ability to care for the child by himself. Edwards stated that during a November 17, 2006, visit with the child, the father exhibited erratic behavior. At that visit, the father was “stumbling around” and acting very tired. Edwards stated that she had been concerned that the father had low blood sugar or was under the influence of narcotics. Edwards administered a drug test to the father at that visit. Edwards testified that the father tested positive for methadone and Valium; according to the father’s testimony, he has prescriptions for both of those medications.
Edwards testified that the November 17, 2006, visit was the only visit at which the father displayed erratic behavior. Edwards stated that in subsequent visits the father’s interaction with the child improved and that he and the child had begun to bond. Edwards also stated that the father was attentive to the child’s needs in later visits.
Kimberly Chatman, the DHR caseworker assigned to the child’s case, testified that she began working with the family in June 2006, that her initial contact with the father occurred in September 2006, and that she worked with him until December 2006. The goals DHR set for the father included obtaining and maintaining employment; obtaining a stable, suitable place to live for himself and the child; obtaining reliable transportation; continuing counseling; and maintaining regular visitation with the child. According to Chatman, during the time she worked with the father in 2006, he was unable to maintain stability or accomplish the other goals set forth in the ISP for the family. Chat-man testified that in December 2006 the father told her that he was tired of dealing with the situation with DHR and the child, that he wanted to transfer custody of the child to the aunt and uncle, and that he only wanted visitation with the child.
Chatman testified that in February 2007 the father indicated to DHR that he was again interested in having custody of the child and that DHR again began providing services to the father. Chatman stated that for at least seven months before the aunt and uncle filed their petition to intervene the father had been unable to meet several of the goals DHR had set for him, including obtaining a job, securing a stable home, and obtaining reliable transportation. On questioning by the father at the June 2007 hearing, Chatman stated that the father appeared to have met all the goals set forth in the ISP except for ob- *597 taming employment. We note, however, that the evidence presented to the trial court demonstrated that the father was only borrowing a vehicle for his transportation; that there was some question whether he actually had permission to use the vehicle; that, at the time of the hearing, his driver’s license had expired; and that he still relied on others for his transportation. Chatman stated that those facts led her to conclude that the father did not, in fact, have reliable transportation. Further, Chatman indicated that because the father had only achieved the goals he did meet shortly before the hearing, the father had not yet demonstrated that he could sustain those achievements.
Chatman stated that she thought the father loved the child and could care for the child, but only if he had assistance and supervision. Chatman explained that, based on the father’s inability to meet the goals DHR had set for him for at least seven months and based on the fact that the father had told DHR he was willing to permit the aunt and uncle to have custody of the child, DHR had decided that permanent placement of the child with the aunt and uncle would be in the child’s best interest.
Chatman stated that her recommendation was to give custody of the child to the aunt and uncle and that she had no reservations about such a custody award. Chatman testified that the aunt and uncle’s home is appropriate and more than adequate for the child and that the child seems to have “integrated” into the aunt and uncle’s home.
The uncle testified that he and his wife have had the child in their home since August 2006, when the child was three months old, and that the child has adjusted well in their household. The uncle stated that the child calls him “Da-da” and calls his wife “Momma.” The uncle testified that he operates his own business and that if he and the aunt were awarded custody the child would be covered by his health insurance. The uncle testified that he has concerns about the father having custody of the child or unsupervised visitation with the child but that he would be open to the father coming to visit the child at the aunt and uncle’s house.
L.D., the father’s mother, testified that the child has a good relationship with the father and seems to be excited when he is around the father. She stated that she had no reservations about the father’s ability to parent the child. L.D. also stated that she is willing to provide transportation and financial support to the father whenever he needs it.
On June 19, 2007, the trial court entered a judgment in which it awarded custody of the child to the aunt and uncle. In its judgment, the trial court noted that the child had been previously adjudicated dependent in the October 26, 2006, judgment that awarded custody of the child to DHR. The June 19, 2007, judgment did not contain a provision concerning either parent’s visitation rights.[2] The father timely appealed to this court.
On appeal, the father argues that the trial court erred by awarding custody to the aunt and uncle and by failing to award him any visitation with the child.
“This court is limited in its review of a trial court’s judgment when the trial court receives ore tenus evidence. A trial court’s judgment based on ore ten-us evidence is entitled to a presumption *598 of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). This ‘presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demean- or.’ Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). However, where the question presented on appeal is whether the trial court correctly applied the law, the ore tenus rule has no application. Ex parte Perkins, 646 So.2d 46 (Ala.1994). Where the issue presented is a question of law, this court’s review is de novo and no presumption of correctness attaches to the trial court’s judgment. Reynolds Metals Co. v. Hill, 825 So.2d 100 (Ala.2002).”
L.L.M. v. S.F., 919 So.2d 307, 311 (Ala.Civ.App.2005).
The father argues that the child was no longer dependent at the time the trial court entered the June 19, 2007, judgment. The trial court did not explicitly find in its June 19, 2007, judgment that the child remained dependent pursuant to § 12-15-1(10). However, this court has held that when the evidence in the record supports a finding of dependency and when the trial court has made a disposition consistent with a finding of dependency, in the interest of judicial economy this court may hold that a finding of dependency is implicit in the trial court’s judgment. See L.L.M. v. S.F., 919 So.2d at 311 (“Given the factual findings contained in the ... judgment, we conclude that a finding of dependency was implicit in the trial court’s judgment.”). See also O.L.D. v. J.C., 769 So.2d 299, 302 (Ala.Civ.App.1999) (holding that, despite trial court’s failure to make a finding of dependency, the evidence in the record supported a determination of dependency); and A.J.J. v. J.L., 752 So.2d 499, 503 (Ala.Civ.App.1999)(holding that, when the trial court failed to make finding of dependency, this court would not remand the case because the evidence supported such a finding). DHR and the aunt and uncle alleged that the child remained dependent, and in its judgment the trial court ultimately awarded custody of the child to the aunt and uncle, a disposition that is consistent with a finding that the child remained dependent at the time of the final judgment. Given the facts of this case, we conclude that a finding of continued dependency was implicit in the trial court’s June 19, 2007, judgment.
The father argues that the evidence does not support a finding that the child remained dependent at the time of the hearing and judgment in this matter. This court has held:
“A finding of dependency must be supported by clear and convincing evidence. § 12-15-65(f)[, Ala.Code 1975]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala.Civ.App.1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court’s ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep’t of Human Res., 716 So.2d 219 (Ala.Civ.App.1998); G.C. v. G.D., 712 So.2d 1091 (Ala.Civ.App.1997); and J.M. v. State Dep’t of Human Res., 686 So.2d 1253 (Ala.Civ.App.1996).”
J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004).
The dependency statute defines, in part, a “dependent child” as a child
*599 “b. Who is without a parent or guardian able to provide for the child’s support, training, or education; or
[[Image here]]
“g. Who has no proper parental care of guardianship; or
[[Image here]]
“k. Whose parents, guardian, or other custodian are unable to discharge their responsibilities to and for the child.”
§ 12-15-1(10), Ala.Code 1975. .
The mother testified at the hearing that she was unable to provide the care that the child needed. The evidence presented at the hearing indicates that the father’s counselor believed that the father should not receive custody of the child at that time. Even the evidence the father submitted in support of awarding custody to him clearly demonstrated that the father could care for or provide for the child only with significant assistance from others.
In asserting that the child was no longer dependent at the time the June 19, 2007, judgment was entered, the father primarily argues that the aunt and uncle were providing more than adequate care for the child and, therefore, that none of the definitions of “dependent child” found in § 12-15-1(10) applied to the child. In making this argument, the father implies that the aunt and uncle are “guardians” or “custodians” of the child as those terms are used in § 12-15-1(10). The father refers this court to no supporting authority for the proposition that a child who has been declared dependent, placed in the legal custody of DHR, and placed by DHR in the care of a relative is no longer dependent.
The term “guardian” is not defined in the dependency statute. However, there is no evidence indicating that the aunt and uncle were ever considered “guardians” of the child pursuant to that statute or that they had any legal rights or obligations with regard to the child during the pen-dency of this matter other than those related to DHR’s having placed the child in their care. The term “legal , custodian” is defined as “[a] person, agency, or department, other than a parent or legal guardian, to whom legal custody of the child has been given by court order or who is acting in loco parentis.” § 12-15-1(16), Ala.Code 1975. DHR has maintained legal custody of the dependent child during the pen-dency of this action. DHR, as the dependent child’s legal custodian, placed the child in the home of the aunt and uncle, but it did not relinquish custody of the child to them.
The father would have this court hold that the dependency statute would no longer apply to protect a dependent child once it is established that DHR, as the legal custodian of the dependent child, had successfully placed the child in a suitable home for care when the child’s parents were unwilling or unable to appropriately care for the child. Such a holding would defeat the intent of the Alabama Juvenile Justice Act, of which the dependency statute is a part, to “facilitate the care [and] protection” of dependent children. § 12-15-1.1, Ala.Code 1975; see also Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996) (“The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute.”). Therefore, we reject the father’s argument that DHR’s placement of the child with the aunt and uncle changed the child’s status and rendered him no longer dependent.
The evidence supports a conclusion that, at the time of the hearing, neither of the child’s parents were capable of providing for the child. Also at that time, custody of *600 the child was vested in a state agency. Therefore, given the evidence in the record, the trial court could have reasonably found that clear and convincing evidence supported a finding of dependency.
The father next argues that the trial court erred in awarding custody of the child to the aunt and uncle. Specifically, the father contends that the trial court erred by not applying in his favor the presumption stated in Ex parte Mathews, 428 So.2d 58 (Ala.1983). The presumption from Ex parte Mathews was later adopted in Ex parte Terry, 494 So.2d 628, 632 (Ala.1986), and quoted as follows:
“ ‘The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of such misconduct or neglect to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question. Hanlon v. Mooney, 407 So.2d 559 (Ala.1981).’ [Ex parte Mathews,] 428 So.2d [58, 59 (Ala.1983)].”
The father is correct that parents typically have the benefit of the presumption stated in Ex parte Terry in custody disputes with nonparents. However, that presumption does not apply in the disposi-tional phase of a dependency proceeding. W.T.H. v. M.M.M., 915 So.2d 64, 70-71 (Ala.Civ.App.2005). Once the trial court has made a finding of dependency, § 12-15-71(a), Ala.Code 1975, empowers the trial court to make various dispositions of the child, including “any ... order as the court in its discretion shall deem to be for the welfare and best interests of the child.” § 12-15-71(a)(4). Alabama courts have interpreted that provision to mean that, in the dispositional phase of a dependency proceeding, the presumption discussed in Ex parte Terry does not apply and that a subsequent transfer of custody is determined by the “best interest of the child” standard. W.T.H. v. M.M.M., 915 So.2d at 70-71; F.G.W. v. S.W., 911 So.2d 1, 3 (Ala.Civ.App.2004).
“This court held in W.T. [v. State Department of Human Resources, 707 So.2d 647 (Ala.Civ.App.1997),] that the parental presumption set forth in Ex parte Terry and Ex parte D.J.[, 645 So.2d 303 (Ala.1994),] is not applicable in the dispositional phase of a dependency proceeding under § 12-15-71 (a). W.T., supra. The appropriate standard to be applied in the dispositional phase of a dependency proceeding is the ‘best interests of the child’ standard. Id. See also Jones [v. Webb, 524 So.2d 374 (Ala.Civ.App.1988)], and D.K.G v. J.H., 627 So.2d 937 (Ala.Civ.App.1993).”
O.L.D. v. J.C., 769 So.2d at 302. Accordingly, because the evidence supports the finding of dependency that is implicit in the trial court’s June 19, 2007, judgment, the “best interest of the child” standard applied to the trial court’s determination that custody of the child should be transferred to the aunt and uncle.
The record in this case reveals that the evidence presented to the trial court supports its award of custody to the aunt and uncle under the best-interest standard. Mays, Edwards, Chatman, and the uncle all expressed serious concerns about the father’s ability to care for the child. The father himself testified that he would not be able to adequately provide physical or financial care for the child absent help *601 from his girlfriend and extended family. The mother testified that the father had engaged in violent behavior towards her and that the father had used a variety of illegal and illegally obtained drugs when she and the father were dating. The father admitted to using those drugs. At the time of the hearing, the father was taking prescription methadone and Valium, a fact that concerned Mays. The testimony regarding the father’s behavior during visits with the child and during a counseling session in November 2006 supports an inference that the father had abused those prescription medications at that time. No one who testified at the hearing other than the father and his mother recommended awarding custody to the father.
The testimony regarding the aunt and uncle and their ability to care for the child was positive. The mother and Chatman both recommended that the aunt and uncle be awarded custody. The uncle testified that the child had been living with his wife and him since August 2006, and both Chat-man and the uncle testified that the child had adapted well to living in the aunt and uncle’s home. The mother and the uncle testified that the child viewed the aunt and uncle as his parents. Chatman and the uncle both testified that the aunt and uncle’s home is more than adequate for the child and that the aunt and uncle have the ability to provide financially for the child. In light of the evidence supporting the trial court’s award of custody, we hold that the father has not shown that the trial court’s custody award was plainly and palpably wrong. L.L.M. v. S.F., 919 So.2d at 311.
The father also argues that the trial court’s order violates § 12-15-1.1(3), Ala.Code 1975, which states that one of the goals under the Alabama Juvenile Justice Act is to “reunite a child with his or her parents as quickly and as safely as possible when the child has been removed from the custody of his or her parents.” This court has held that, in most cases, “DHR has the duty to make reasonable efforts to rehabilitate the [parent] so that family reunification might be attainable.” C.B. v. State Dep’t of Human Res., 782 So.2d 781, 785 (Ala.Civ.App.1998). However, the record supports a conclusion that DHR did make reasonable efforts to reunite the father with the child and that the father did not make sufficient progress. The testimony revealed that DHR had arranged for the father to have parental and mental-health counseling sessions with Mays. DHR held ISP meetings with the father and established a list of goals the father needed to reach and maintain in order to regain custody of the child. DHR arranged for the father to have regular visits with the child. Chatman testified that, despite those efforts, the father failed to satisfy the goals that DHR had set out for him and that, due to the father’s unemployment and lack of reliable transportation, the father was still unable at the time of the June 6, 2007, custody hearing to support the child. Therefore, the trial court could have concluded that DHR made reasonable efforts to reunify the father with the child.
The father next argues that the trial court erred in failing to award him visitation with the child. Even after a child has been declared dependent, the child’s parents retain certain “residual rights,” including, among others, the right to visitation with the child. § 12-15-1(24), Ala.Code 1975. In dependency cases such as this one, “[t]his court has repeatedly stated that the trial court’s only parameter [for awarding visitation to the parent of a dependent child] is the best interests and welfare of the child.” Floyd v. Alabama Dep’t of Human Res., 550 So.2d 980, 981 (Ala.Civ.App.1988).
*602 “In awarding visitation rights relating to the disposition of a ‘dependent child’ pursuant to § 12-15-71(a), the trial court is guided by the ‘best interests of the child’ standard. See § 12-15-71(a)(4) (‘If a child is found to be dependent, the court may make any of the following orders of disposition to protect the welfare of the child: ... (4) Make any ... order as the court in its discretion shall deem to be for the welfare and best interests of the child.’).
“ ‘ “ ‘The determination of proper visitation ... is within the sound discretion of the trial court, and that court’s determination should not be reversed absent a showing of an abuse of discretion.’ Ex parte Bland, 796 So.2d 340 (Ala.2000). ‘[C]ases in Alabama have consistently held that the primary consideration in setting visitation rights is the best interests and welfare of the child. Furthermore, each child visitation case must be decided on its own facts and circumstances.’ Fanning v. Fanning, 504 So.2d 737, 739 (Ala.Civ.App.1987) (citations omitted). “When the issue of visitation is determined after oral proceedings, the trial court’s determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987).’ Dominick v. Dominick, 622 So.2d 402, 403 (Ala.Civ.App.1993).” ’ ”
K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379, 387-88 (Ala.Civ.App.2004) (quoting K.L.R. v. L.C.R., 854 So.2d 124, 132 (Ala.Civ.App.2003), quoting in turn K.L.U. v. M.C., 809 So.2d 837, 840-41 (Ala.Civ.App.2001)).
In Heup v. State Department of Human Resources, 522 So.2d 295 (Ala.Civ.App. 1988), three children were declared dependent after evidence indicated that two of the children had been sexually abused by their stepfather, who was the father of the third child. The trial court’s dependency judgment denied the parents visitation with the children. However, in reaching that determination, the trial court stated that the issue of visitation, and the terms of any visitation awarded, would depend on the recommendations of the children’s treating physician and counselor. This court affirmed, stating that “[t]he [trial] court’s discretion [in matters of visitation with dependent children] has been given broad interpretation with its only parameter being the welfare and best interests of the child.” Heup v. State Dep’t of Human Res., 522 So.2d at 299.
In Heup, supra, the evidence supported a conclusion that, at least at the time of the entry of the order giving rise to the appeal, visitation with the parents was not in the children’s best interests. In this case, the evidence presented to the trial court supported the trial court’s findings that the child was dependent and that an award of custody to the father was not in the child’s best interest. However, the record contains little evidence supporting a conclusion that an award of visitation with the father was not in the child’s best interests.
Most of the testimony of the witnesses supported the father having at least supervised visits with the child. Mays testified that the father had made significant progress in his visits with the child. Edwards testified that, after the November 2006 visit in which the father displayed erratic behavior and tested positive for methadone and Valium, the father’s interaction with child had improved. Edwards stated that during visitation the father was attentive to the child’s needs and that the father and the child had begun to bond. Chatman testified that she thought the father loved *603 the child and could care for him with assistance and supervision. The uncle stated that, although he had concerns about the father’s having custody of the child, he would be receptive to the father’s visiting the child at the aunt and uncle’s house.
The evidence presented at the hearing does not support a finding that it would be in the best interests of the dependent child to completely deny the father visitation. See § 12-15-71(a)(4); K.B. v. Cleburne County Dep’t of Human Res., supra. In light of the foregoing, we hold that the trial court exceeded its discretion in failing to award the father visitation with the child. We therefore reverse the trial court’s judgment insofar as it denies visitation to the father, and we remand the case for the entry of a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Specifically, the transcript reads as follows:
"Q. Based on what you have observed, the total picture with [the father], is he— would he be an appropriate caregiver for his son right now?
"A. Not right now.”

. We note that the June 19, 2007, judgment indicated that the trial court intended to dispose of all the pending issues. Therefore, we deem the order to be sufficiently final so as to support the appeal.