MOORE, Judge,
concurring in part and concurring in the result in part.
I fully concur in those parts of the main opinion denying the motions to dismiss the appeal and reversing the juvenile court’s judgment for considering the posttrial recommendation of the guardian ad litem. I also concur in that portion of the main opinion refusing to consider those eviden-tiary arguments raised by M.B. (“the father”), but made without citation to legal authority. I concur in the result as to that part of the main opinion holding that the juvenile court had subject-matter jurisdiction and that the juvenile court did not err in admitting the testimony of Patti Shaw Gilliland over the father’s hearsay objection.

Stibjedr-Matter Jurisdiction

The father argues that the juvenile court lacked subject-matter jurisdiction to enter its September 2, 2005, order, and, thus, that all subsequent custody orders, including the final December 13, 2007, judgment, are void. I reject the father’s argument, but for reasons different from those set out in the main opinion.
In addressing the father’s argument, the starting off point requires consideration of the matters adjudicated in the September 2, 2005, order. Unfortunately, due to our own precedent, we are left to a great deal of guesswork on that point. It would be simple to determine if the juvenile court relied on its dependency jurisdiction by merely referring to the order to see if it expresses a finding of dependency. However, this court long ago decided that a written finding of dependency is not required when that finding may be inferred from the judgment. See, e.g., E.H.Y. v. Covington County Dep’t of Human Res., 602 So.2d 439 (Ala.Civ.App.1992); and Phillips v. Alabama Dep’t of Pensions & Sec., 394 So.2d 51 (Ala.Civ.App.1981). Thus, this court has, perhaps unwittingly and certainly unjustifiably, placed upon itself the difficult task of determining when a juvenile court’s judgment implies a finding of dependency and when it does not.
*252 Alabama Code 1975, § 12 — 15—65(d), requires a juvenile court to “record” its findings of dependency, and Rule 25(A)(1), Ala. R. Juv. P., states that
“[a]t the close of the heai'ing the court shall make one of the following findings in a docket entry or mitten order:
“(1) that the facts alleged in the petition are true and the child is dependent, in need of supervision, or delinquent and is in need of care or rehabilitation .... ”
I do not think it is simply a “better practice” for a juvenile court to record in writing a finding of dependency, 3 So.3d at 247; it is an absolute requirement, as the imperative terms of the applicable statute and rule clarify. See Ex parie Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998) (quoting Black’s Law Dictionary 1375 (6th ed. 1991)) (“ ‘As used in statutes, contracts, or the like, [the word “shall”] is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term “shall” is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation. The word in ordinary usage means “must” and is inconsistent with a concept of discretion.’ ”).
Written findings of fact serve the dual purposes of compelling the juvenile court to reflect on the magnitude, certainty, and correctness of its decision and to crystallize for this court the basis for its judgment. See Ex parte Vaughn, 495 So.2d 83, 87 (Ala.1986) (concluding that written findings of fact “permit the trial judge an opportunity to carefully review the evidence” and to “correct any error in judgment which he or she may have made upon initial review” and “perfect the issues for review on appeal”).
A clear finding of dependency is essential to a juvenile court’s judgment because that finding marks the point at which the state’s interest in protecting the child from harm has overcome the parent’s fundamental right to the care, custody, and control of the child. See J.W. v. N.K.M., 999 So.2d 526, 540 (Ala.Civ.App.2008) (Moore, J., dissenting). Following a finding of dependency, a juvenile court may, over the objection of the parents of the child and based on its own notions of what is in the child’s best interests, remove the child from its home and transfer the custody of the child to any person or entity the juvenile court finds to be qualified to receive and care for the child. See Ala.Code 1975, § 12-15-71(a). Thereafter, the juvenile court may monitor the custodian to assure that the best interests of the child, as understood by the court, are being served. See Ex parte Montgomery County Dep’t of Human Res., [Ms. 2070163, May 23, 2008] — So.3d -, - (Ala.Civ.App.2008). Therefore, the juvenile court should be required to make a written finding confirming the dependency of the child.
A written finding of dependency further promotes judicial efficiency by precluding precisely the sort of exercise this court has been forced to undergo in this case. Because the juvenile court did not make any express finding one way or the other regarding dependency, this court has spent considerable time and resources simply to determine if the juvenile court adjudicated the issue of dependency. The court is divided on that issue, and many pages of the main opinion and this special writing are devoted to defending the opposing positions. Requiring a clear written finding of dependency would obviate that problem in most cases.
For the foregoing reasons, I would overrule those cases excusing a juvenile court from complying with § 12-15-65(d) and Rule 25(A)(1). However, because my opinion is in the minority, I undertake the arduous task of ascertaining whether a *253 finding of dependency may be implied from the juvenile court’s September 2, 2005, order.
In J.P. v. S.S., 989 So.2d 591 (Ala.Civ. App.2008), this court held
“that when the evidence in the record supports a finding of dependency and when the trial court has made a disposition consistent with a finding of dependency, in the interest of judicial economy this court may hold that a finding of dependency is implicit in the trial court’s judgment.”
989 So.2d at 598 (citing L.L.M. v. S.F., 919 So.2d 307, 311 (Ala.Civ.App.2005), O.L.D. v. J.C., 769 So.2d 299, 302 (Ala.Civ.App. 1999), and A.J.J. v. J.L., 752 So.2d 499, 503 (Ala.Civ.App.1999)). Putting aside for the moment the question whether the record on September 2, 2005, supported a finding of dependency, the juvenile court did not make “a disposition consistent with a finding of dependency.” Although the juvenile court initially awarded sole custody of the child to the maternal grandparents on September 2, it subsequently modified its September 2 order on September 16 to award the maternal grandparents joint custody of the child with the father, who received unsupervised and unrestricted physical custody of the child for two weeks of every month. That disposition totally contradicts any implication that the juvenile court found that the child was dependent due to the inappropriate conduct of the father, as alleged in the maternal grandparents’ petition. See generally Lawrence v. Cannon, 998 So.2d 1070, 1072 (Ala.Civ.App.2008) (noting that award of joint custody is inconsistent with finding of parental unfitness).
In both E.H.Y., supra, and Phillips, supra, the court inferred a finding of dependency from the fact that the dependency petition in each case sought a change in the custody of the child based solely on the grounds of dependency and the juvenile court stated that it found the allegations of the petition to be true. Naturally, if the petitioner asserts only one ground for obtaining custody of the child, and that ground is the dependency of the child, an order awarding custody based upon the truthfulness of the facts as alleged in the petition equates to a finding of dependency. However, if the petition alleges alternative grounds for custody, including but not limited to the dependency of the child, then an order awarding custody does not necessarily implicate a finding of dependency.
In this case, unlike in E.H.Y. and Phillips, the maternal grandparents did not seek custody based solely on the juvenile court’s dependency jurisdiction. In their petition, the maternal grandparents alleged the various facts set out in the main opinion, see 3 So.3d at 239-41, and further requested that “[the child] be declared dependent for custody purposes” and that the juvenile court enter an emergency order awarding them custody of the child “in order to protect the well being of the child.” Based on the relief requested, see Garris v. Garris, 643 So.2d 993, 995 (Ala. Civ.App.1994) (“The relief sought within the pleading governs, and the nomenclature of the pleading is not controlling.”), the maternal grandparents sought both a dependency adjudication and instant custody of the child for protective purposes.
The first request invoked the juvenile court’s dependency jurisdiction under Ala. Code 1975, § 12-15-30(a) (“The juvenile court shall exercise exclusive original jurisdiction of proceedings in which a child is alleged to be delinquent, dependent or in need of supervision.”). The second request invoked the juvenile court’s emergency jurisdiction under Ala.Code 1975, § 12-15-153, which provides:
*254 “The court may enter a protection or restraint order on an emergency basis, without prior notice and hearing, upon a showing of verified written or oral evidence of abuse or neglect injurious to the health or safety of the child and the likelihood that such abuse or neglect will continue unless the order is issued. If an emergency order is issued, a hearing, after notice, must be held within 72 hours or the next judicial business day thereafter, to either dissolve, continue or modify the order.”
Because of the alternative bases pleaded by the maternal grandparents, the award of custody to the maternal grandparents “[u]pon consideration of the facts and circumstances listed in [the maternal grandparents’] Emergency Petition for Custody” did not necessarily imply a finding of dependency.
Furthermore, the main opinion’s conclusion that the juvenile court had jurisdiction pursuant to § 12-15-30(a) to enter the September 2 order indicates that a juvenile court may find a child dependent in an ex parte proceeding. It is undisputed that the juvenile court entered its September 2 order based solely on the petition filed by the maternal grandparents and them affidavits, which tracked the language in the petition verbatim. The juvenile court did not provide notice to the father of the petition or conduct a hearing wherein the father received an opportunity to contest the petition. As the father correctly points out, nothing in the law enables a juvenile court to find that a child is dependent and award custody to another private party without notice to the parents. In fact, the law specifically requires that the parents be notified and be given an opportunity to be heard before entry of a judgment finding the child dependent. See § 12-15-53, Ala.Code 1975 (requiring service of petition and summons on parents in dependency cases); § 12-15-63, Ala.Code 1975 (requiring court to advise parents of right to counsel); § 12-15-65, Ala.Code 1975 (governing trial procedure in dependency cases); Rule 13, Ala. R. Juv. P. (requiring service and notice of hearings in dependency cases); and Rule 24, Ala. R. Juv. P. (detailing conduct of healings in dependency cases). I disagree with any suggestion that the juvenile court has jurisdiction under § 12-15-30(a) to transfer custody of a child to a private party following an ex parte proceeding; therefore, I cannot concur in the main opinion’s conclusion that the juvenile court was exercising its dependency jurisdiction in entering the September 2 order.
However, I do not agree with the father that just because the juvenile court lacked jurisdiction under § 12-15-30(a) to enter the September 2 order, it had no subject-matter jurisdiction. As set out above, § 12-15-153 specifically authorizes a juvenile court, upon receipt of the appropriate verified evidence, to enter an emergency ex parte order transferring custody to a private party in order to protect the child from abuse or neglect. See K.S. v. G.A.B., 911 So.2d 1085, 1096 (Ala.Civ.App.2005). The record reveals that the maternal grandparents filed affidavits contemporaneously with their petition that tracked the allegations in the petition verbatim. Those affidavits verified that “based upon information and [the] belief’ of the maternal grandparents, the child was being subjected to abuse or neglect injurious to the child’s health and safety. See Harper v. J & C Trucking & Excavating Co., 374 So.2d 886, 890-92 (Ala.Civ.App.1978) (holding that affidavit based upon information and belief was sufficient to verify facts under materialmen’s lien statute). The juvenile court clearly exercised its jurisdiction under § 12-15-153 in entering the September 2 order.
*255 Any doubt as to the juvenile court’s intent is resolved when considering its statements at the September 13 hearing in which the father sought to dissolve the September 2 order.[8] At the outset of the hearing, the juvenile court stated, consistent with the last sentence of § 12-15-153, that the only issue to be decided at that time was “whether or not to vacate the emergency and ex parte order” entered on September 2. The juvenile court then granted each side 30 minutes to present their cases “because this is a temporary matter, temporary custody, to present what it is you need to show me of why either I should keep the temporary order in effect or I should set it aside and change custody back to the father.” At one point during the hearing the juvenile court clarified that the purpose of the hearing was to decide
“what’s best for the child right now until you can have a further hearing. That’s all this is about, is on a temporary order do I need to dissolve this emergency petition where one part of the family has got the child away from the other family and what relief, if any, do I need to do until I can have a further hearing.... So it’s not a trial on the merits. This is only an emergency hearing.”
Those statements solidify the position that the juvenile court was exercising its emergency jurisdiction under § 12-15-153.[9]
I agree with the father that the juvenile court erred in awarding any custody to the maternal grandparents because they did not prove during the September 13 hearing that the child was being subjected to abuse or neglect injurious to his health and safety. However, that error does not affect the juvenile court’s subject-matter jurisdiction, as the father argues. See Ex parte Butler, 972 So.2d 821, 825 (Ala.2007) (“Subject-matter jurisdiction concerns a court’s power to adjudicate a case, not the merits of the court’s decision in the case.”). The juvenile court had the power to adjudicate the petition of the maternal grandparents under § 12-15-153; that it adjudicated the petition incorrectly does not mean it never had the power to act.[10]
Because his premise that the juvenile court lacked subject-matter jurisdiction to enter the September 2005 orders is incorrect, the father’s conclusion that all the juvenile court’s subsequent orders are void necessarily fails. I nevertheless point out that the father did not cite any legal authority to support his argument or his conclusion. See Alexander v. Alexander, 985 So.2d 490, 493 (Ala.Civ.App.2008) (holding that appellate court may affirm *256 judgment of lower court on issue appellant argues without citation to legal authority in contravention of Rule 28(a)(10), Ala. R.App. P.). If the juvenile court lacked jurisdiction to transfer custody of the child in September 2005, the father has not explained how that lack of jurisdiction would have prohibited the juvenile court from later exercising its lawful jurisdiction under § 12-15-30(a) to find the child dependent and transfer custody according to the best interests of the child.
For the foregoing reasons, and those reasons alone, I concur that none of the orders or judgments entered by the juvenile court are void for lack of subject-matter jurisdiction.

Admissibility of Gilliland’s Testimony

I agree that the juvenile court did not err in admitting the opinion of Patti Shaw Gilliland that it was in the child’s best interest to be placed with the maternal grandparents. The record reveals that the juvenile court adjudicated the dependency of the child and disposed of the child’s custody in the same hearing, as authorized by Rule 25, Ala. R. Juv. P. (“At any hearing other than to transfer to another court, the court may handle all matters at one time or in phases.”). During that hearing, the juvenile court admitted Gilliland’s opinion testimony, which was based on hearsay statements of the child and others. Alabama Code 1975, § 12-15-65(h), authorizes receipt of that evidence over a hearsay objection in the dispositional phase of the ease. Finding nothing to indicate that the juvenile court improperly used that evidence in the adjudicatory phase, I agree that the juvenile court did not err in any respect in overruling the father’s objection.
Because § 12 — 15—65(h) controls the issue, I see no reason to discuss whether the admission of Gilliland’s testimony violates S.J.R. v. F.M.R., 938 So.2d 352 (Ala.Civ. App.2004), which is not a juvenile case. Therefore, I do not join in any aspect of the main opinion discussing that case. I point out further that nothing in the main opinion’s discussion should be construed as holding that a statement made to a therapist for treatment purposes may be admissible under Rule 803(4).

. The hearing actually should have taken place on September 6, 2005, the day after Labor Day, because § 12-15-153 requires a hearing to take place within 72 hours of the emergency order or the next judicial business day after the 72-hour period in order to determine whether the order should be dissolved, modified, or continued. However, the father does not raise that error in his appeal.

. Although the juvenile court described the hearing as one related to “dependency and custody” in its September 16 order, in that same order it later more accurately stated that the only issue tried was "whether to vacate and set aside the ex parte custody order.” See Lester v. Scarbrough, 668 So.2d 35 (Ala.Civ.App. 1995) (court may consider parol evidence in construing ambiguous judgment).

.The father does not argue that the September 2 and September 16 orders should be vacated for any reason other than for lack of subject-matter jurisdiction. Having found that the juvenile court had subject-matter jurisdiction, I would pretermit any further discussion regarding those judgments. Thus, while I do not necessarily disagree with the main opinion's conclusion that any other argument regarding those judgments would be moot, 3 So.3d at 247, I do not join that aspect of the main opinion.