L. CHARLES WRIGHT, Retired Appellate Judge.
P.Y. (father/appellant) and P.Y. (mother) were divorced in the state of Georgia in 1980. The father was awarded custody of the parties’ minor daughter, J.Y. In 1985 the mother, a resident of Alabama, alleged that the child was being sexually abused by the father. A Georgia court reviewed the matter and found that both parents had engaged in deviant sexual behavior and that the father did not have a normal parent/child relationship with his daughter. The court opined that the father was in need of intensive psychotherapy. The child was eventually placed in the custody of the Georgia Department of Family and Children Services, where she remained for two years. The father’s visitation rights were terminated in 1986.
In 1987 the father filed a petition to modify his visitation rights. The mother filed a counterclaim for custody. Following a hearing, the Georgia court found that the father continued to exhibit deviant sexual behavior toward the child. Custody of the child was transferred to the mother in Alabama.
Four months after the child was placed in her mother’s custody, the Marshall County, Alabama, Department of Human Resources filed a petition in the juvenile court, alleging the child to be dependent due to the mother’s mental illness. Custody of the child was placed with the department.
In 1988 physical and temporary legal custody of the child was placed with a maternal aunt and uncle, who were residents of Florida. In 1990 the maternal aunt sent the child back to Alabama for her to live with another aunt. That aunt was unable to care for the child. Consequently, she contacted DHR. DHR received temporary custody of the child at that time.
A dispositional hearing was held in February 1992. Information from the Georgia and Florida courts and agencies was submitted to the court for its review. The father was present at the hearing and orally requested that he be granted visitation rights with the child. Following oral proceedings, the court entered a detailed order, leaving custody of the child with DHR. It determined that the father was not fit to have visitation with the child “until such time as the court can be shown that there has been a substantial change in his approach to the existence of a problem, which he has in sexual matters.” The court ordered the father to undergo psychological testing “to ascertain the existence of any such problem.” If it was determined that he had such a problem, the father’s request for visitation would not be considered until such time that he underwent successful treatment. The court found that the father was voluntarily unemployed and ordered him to pay child support. No appeal was taken from that order.
In October 1992 the father filed a petition for custody. A hearing was held in March 1993. At the time of the hearing, the child was approximately 15 years of age. Following the proceedings, the trial court entered an order, finding that the father was “unable to establish a material change in circumstances sufficient to warrant a modification of the previous orders and judgments of this Court, particularly with regard to the award of custody to the Department of Human Resources of Marshall County.” The court further found that it would not be in the best interests of the child to be compelled to visit with her father. The father appeals.
The father raises numerous issues for our consideration. There are, however, only two issues properly before us. They are— whether the trial court erred in refusing to grant custody to the father and whether the trial court erred in denying the father visitation rights.
The issue of whether there should be a change of custody of the child is a matter for the judicial discretion of the trial court. This court is not empowered to disturb that decision without compelling evi *1023 dence that the decision is unfair, unjust, and contrary to the best interests of the child. Calabrisi v. Borne, 470 So.2d 1255 (Ala.Civ.App.1985). The issue of visitation is also a matter within the trial court’s discretion. Minchew v. Mobile County Department of Human Resources, 504 So.2d 810 (Ala.Civ.App.1987).
In this ease our review of the judgment is also subject to the limitations established by our supreme court in Ex parte McLendon, 455 So.2d 863 (Ala.1984). Under McLendon the father had the burden of showing that a material change in circumstances had occurred since the last custody determination and that the change in custody would materially promote the child’s best interests and welfare. He had the burden of showing that the positive good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Foster v. Carden, 515 So.2d 1258 (Ala.Civ.App.1987).
The record reflects that at the time of the hearing, the father was attempting to complete the requirements for a bachelor’s degree in business administration. He was unemployed and was being supported by his present wife. He and his wife had a twenty-month-old child and were awaiting the birth of their second child. His wife had custody of one child from a previous marriage and had joint custody of two other children. The father testified that his current home situation was quite comfortable and that it was a very wholesome and healthy environment for any family.
The father testified that it had been approximately eight years since he had had any significant contact with his daughter. He felt that the separation was unjustified and that it was not his fault. He denied that he had ever sexually abused his daughter. He believed that his daughter needed to be reunited with family members. If the court placed custody with him, he hoped he would be able to see that she finished her schooling in a “much more happy environment.” When asked how he thought changing custody would materially promote the child’s best interests, the father stated that, in his opinion, it is always a tragedy when a child is separated from- a parent and that the child would become a more well-rounded and happier child than she currently was if he had custody.
Ms. Katherine Upton, a social worker with DHR, testified that she had been involved with the minor child and her situation since 1987. She believed, based upon her interviews with the child’s numerous therapists, that the father presented a danger to the child. She firmly believed that the father had sexually abused the child and that it was in the child’s best interests not to have any contact with the father. She testified that the child had recently expressed that her only desire was to confront her father with what he had done to her. She had no desire to visit with him. Based upon Ms. Upton’s knowledge of the child and the child’s past history, Ms. Upton thought that visitation with the father would adversely affect the child’s psychological well-being.
Considering the lengthy past history of this case, and the trial court’s knowledge of the prior proceedings, we find that the evidence presented by the father in support of his petition falls far short of the burden placed upon him by McLendon. The tragedy of this case is that this child has been shuffled from one foster home .to another for most of her life. She is now 15 years old and is still in a foster home, with little prospect for the future. The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.