PITTMAN, Judge.
This appeal arises from a judgment entered in April 2014 by the Shelby Juvenile Court in three dependency actions brought by the Shelby County Department of Human Resources (“DHR”) and by three other parties concerning a minor child, J.D.B. (“the child”). In that judgment, the juvenile court, in pertinent part, determined that the child, who apparently had been found in open court to be dependent, “remained a dependent child”; disposed of the child’s custody by awarding custody to the child’s father, D.M.B. (“the father”); specified the visitation rights of the child’s mother, D.D.P. (“the mother”); directed the mother to pay child support to the father; and closed the case to further proceedings. Following the denial of her postjudgment motion to alter, amend, or vacate the judgment, the mother appealed to this court; she asserts (a) that the juvenile court’s initial oral determination of the child’s dependency violated her due-process rights; (b) that the juvenile court’s disposition of the child was erroneous; (c) that the juvenile court erred in failing to consider certain custodial factors listed in the Alabama Parent-Child Relationship Protection Act (“the Act”), Ala.Code 1975, § 30-3-160 et seq.; (d) that the juvenile court erred in determining visitation and child support; and (e) that the juvenile court erred in failing to follow the require- *2 merits of Rule 59(g), Ala. R. Civ. P.,[1] by denying her postjudgment motion without holding a hearing as requested in that motion.
The record reveals that the mother and the father were not married at the time of the child’s birth in July 2004 but that, in an action brought in Shelby County against the father by the State of Alabama on the relation of the mother, a consent judgment had been entered to the effect that the mother would have custody of the child until July 2009, at which time the parties would have joint custody. In November 2009, DHR filed a dependency petition in the juvenile court as to the child,' asserting that the child’s parents were unable or unwilling to discharge their responsibilities to and for the child; the petition further alleged that the child had been treated at a children’s hospital for “multiple bruises to his back and inner thigh” that had “allegedly occurred while he was in the care of the mother and [the child’s] stepfather,” A.P. A similar dependency petition was also filed regarding the child by the child’s paternal grandmother, M.A., and her husband, D.A. The juvenile court initially awarded temporary custody of the child to M.A. and D.A., noting that the father, who was serving a tour of military duty in Iraq at the time, supported their custody request; that court also set an adjudicatory hearing for April 6, 2010.
During the course of the April 6, 2010, hearing, the juvenile court received testimony from two police officers who had interviewed .the child and had photographed bruising that had been suffered by the child, as well as testimony from the mother. Immediately after hearing that testimony, however, the juvenile court, over the objection of the mother’s first attorney indicating that he had intended to present testimony from other witnesses, stated in open court that it had determined the child to be dependent and directed that further proceedings would concern only the disposition of the child. After one additional witness, a DHR employee, had testified, the juvenile court directed that the hearing be recessed, indicating that further testimony would be heard 10 days later. However, counsel for the mother and the child’s stepfather successfully moved for a continuance of that hearing for the purpose of securing witnesses, and they later moved for a continuance of a subsequently scheduled January 2011 hearing because of an attorney scheduling conflict.
After the father’s return from his duty in Iraq and his assignment to Fort Ben-ning, Georgia, he filed a dependency petition in the juvenile court in August 2010 as to the child and requested that he be awarded custody; that filing constituted the third dependency petition involving the child. In September 2011, the mother, acting through a second attorney, filed a motion to dismiss the father’s petition, asserting that DHR, after an investigation into the abuse and failure-to-protect claims made against the mother and A.P., had determined that those allegations were “not indicated” to be true; she also moved to require DHR to show cause why custody of the child should not be returned to her. The record does not indicate that the juvenile court addressed the mother’s motions at any time before the entry of its final judgment in April 2014.
The juvenile court ultimately held another evidentiary hearing in the case in January 2013. At the outset of that hearing, a *3 third attorney appearing for the mother noted the existence of easelaw requiring that a child must be dependent at the time of custodial disposition and suggested that, if the juvenile court intended to make such a disposition as to the child, dependency would again have to be established; in response, the juvenile court, noting that it had “extensively gone over the grounds and the reasoning for [the] finding of dependency on April 6th, 2010,” stated that it would not be “going to go over that again” and would deem the January 2013 proceedings as being “in the nature of a dispo-sitional hearing.” The juvenile court then heard evidence from witnesses called by DHR, the father, and the mother. At the close of the January 2013 hearing, the mother’s third attorney asserted in a closing argument that, among other things, there arose under the Act “a presumption that a move from Alabama to Ohio,” i.e., the state of the father’s current residence, “is not in the child’s best interest.”
As has been mentioned, the juvenile court entered a judgment disposing of the three dependency petitions in April 2014, 15 months after the January 2013 “disposi-tional” hearing. The juvenile court’s judgment stated that that court had previously determined the child to be dependent because of the father’s deployment and the mother’s having abused the child or having allowed the abuse of the child by A.P., and it declared that the child remained dependent at the time of the dispositional hearing. The court awarded custody of the child to the father subject to visitation by the mother, which visitation was to be phased in gradually, starting with four weekend days of visitation in the municipality in which the child resided, then progressing to two nonconsecutive weekends of overnight visitation in that municipality, then expanding to one week of visitation in the mother’s home, and finally extending to “standard” alternating weekend visitation without a specified location and two alternative schedules of holiday visitation. The mother was determined to be working and earning a monthly gross income of $2,500 and was directed to pay child support of $470 per month to the father. All other relief sought by the parties was denied by the juvenile court, and it expressly relinquished jurisdiction over future proceedings. The mother’s timely filed post-judgment motion to alter, amend, or vacate the judgment, which requested a hearing pursuant to Rule 59(g), Ala. R. Civ. P., was denied, and she timely appealed to this court. Because the juvenile-court judge certified the record as adequate for appellate review in the manner specified in Rule 28(A), Ala. R. Juv. P., as it read at the time the appeal was taken, we have jurisdiction to hear the appeal.
The mother’s first argument attacking the validity of the juvenile court’s award of custody to the father concerns that court’s determination during the April 2010 hearing that the child was dependent; she argues that her due-process rights were violated when that court orally determined the child’s dependency in open court based solely upon the testimony of the mother herself and the two police officers called by DHR as witnesses. Her second, related, argument is that the juvenile court erred' in proceeding to hold a dispositional hearing in January 2013 in the absence of an express finding of dependency based upon evidence adduced at that time.
As the mother correctly notes in her appellate brief, this court has stated that, “ ‘in order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.’” V.W. v. G.W., 990 So.2d 414, 417 (Ala.Civ.App.2008) (quoting K.B. v. Cleburne Cnty. Dep’t of Human Res., 897 So.2d 379, 389 (Ala.Civ.App.2004) (Murdock, J., concurring in the *4 result) (emphasis added in V.W.)). The juvenile court determined in its April 2014 judgment that the child at issue “remained” dependent “at the time of th[e January 2013] hearing,” but it added that the January 2013 hearing “was the disposi-tional hearing subsequent to the adjudication of dependency” that the juvenile court had made in open court in its April 2010 hearing (which was held approximately six months after DHR and M.A. and D.A. had filed their dependency petitions in the juvenile court).
Under the particular circumstances of this case, in which the dependency of the child was initially determined-in April 2010 and the juvenile court expressly declined to consider the issue of dependency in the January 2013 hearing by limiting the scope of that hearing solely to dispositional matters, we must conclude that the mother’s constitutional rights to due process were violated. “‘“It is well settled that ‘[i]n dealing with such a delicate and difficult question — the welfare of a minor child— due process of law in legal proceedings should be observed,’ which necessarily includes ‘a hearing or opportunity to - be heard before a court of competent jurisdiction,””” M.G. v. J.T., 90 So.3d 762, 764 (Ala.Civ.App.2012) (quoting earlier cases), and, concomitantly, “ ‘an opportunity to present evidence and arguments [and] ... a reasonable opportunity to controvert the opposition’s claims,’” R.C. v. L.C., 923 So.2d 1109, 1111-12 (Ala.Civ.App.2005) (quoting Crews v. Houston Cnty. Dep’t of Pensions & Sec., 358 So.2d 451, 455 (Ala.Civ.App.1978) (emphasis added in 12.(7.)). In ruling at the outset of the January 2013 hearing that the juvenile court would adhere to its nearly three-year-old oral declaration regarding the child’s dependency — a declaration that was rendered suspect by the intervening “not indicated” finding by DHR as evidenced by the mother’s September 2011 motions — the juvenile court deprived the mother of an opportunity to impeach the correctness of that earlier oral determination of dependency, cf. Rule 54(b), Ala. R. Civ. P. (under which “any order or other form of decision ... which adjudicates ... the rights and liabilities of fewer than all the parties ... is subject to revision at any time before the entry of’ a final judgment), as well as denying her the opportunity to demonstrate that, in any event, the child was no longer dependent under Alabama law.
Based upon the foregoing facts and authorities, we conclude that the mother was improperly denied her procedural right to controvert the juvenile court’s April 2010 determination of dependency. Accordingly, we reverse the juvenile court’s judgment awarding custody of the child to the father and remand the cause for the juvenile court to conduct further proceedings, which should include determining whether the child is currently dependent under applicable statutes, and to enter a judgment in conformance with this opinion. In light of our conclusion as to the procedural impropriety of the juvenile court’s disposition of the child’s custody, we pretermit consideration of the mother’s remaining arguments.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P. J., and THOMAS, MOORE, and DONALDSON, JJ., concur.

. Pursuant to Rule 1(A), Ala. R. Juv. P., the Alabama Rules of Civil Procedure apply to juvenile-court proceedings to the extent that they are not contrary to pertinent juvenile-procedure rules or statutes.