THOMPSON, Presiding Judge.
*410 This court's opinion of July 21, 2017, is withdrawn, and the following is substituted therefor.
On April 23, 2015, B.M. and T.S. ("the maternal grandparents") filed in the Autauga Juvenile Court ("the juvenile court") petitions alleging that D.L.H. ("the child") and W.H. ("the half sibling"), the minor children of C.H. ("the mother"), were dependent and seeking awards of custody of the children. We note that the record contains little evidence regarding the action pertaining to the half sibling. That child was quickly returned to the parents' custody and is not at issue in these appeals. Accordingly, we address only the action pertaining to the child. We further note that parallel dependency actions pertaining to the children were initiated by the Autauga Department of Human Resources ("DHR") before the maternal grandparents filed their petition regarding the child in the underlying action. DHR's dependency actions are discussed in greater detail later in this opinion.
In their dependency petition, the maternal grandparents alleged that D.H. ("the father")[1] had sexually abused the child and that the mother was not taking action to properly protect and care for the child. On June 4, 2015, the juvenile court entered a pendente lite order in which it, among other things, left legal custody of the child with the parents, awarded pendente lite physical custody to B.M. ("the maternal grandmother"), and ordered that the father not have contact with the child. In that order, the juvenile court also left legal and physical custody of the half sibling with the parents but ordered that the half sibling and the child have visitation with each other.
On April 19, 2016, the juvenile court entered an order after receiving ore tenus evidence. In that order, the juvenile court found the child to be dependent and awarded custody to the maternal grandparents, denied the father visitation with the child, but awarded the mother visitation. The juvenile court conducted a final hearing on the merits on May 16, 2016.
On June 14, 2016, the juvenile court entered a judgment in which it again found the child to be dependent and awarded custody of the child to the maternal grandparents. In entering that judgment, the juvenile court found the child's allegations of abuse and "other problems in the home" to be credible, and it noted that the mother and the father had not believed the child and had claimed that the child could not distinguish dreams from reality.
On June 16, 2016, two days after the entry of the custody judgment, the father filed a notice of appeal from the juvenile court's judgment to the Autauga Circuit Court ("the circuit court"). In his June 16, 2016, notice of appeal, the father alleged that there was an inadequate record for appellate review, and he sought a trial de novo. On June 21, 2016, the father filed a "brief on notice of appeal filing," in which he asserted that he had filed a notice of appeal on June 16, 2016, but that that notice of appeal did not appear in "Alacourt records," i.e., in the electronic court-system *411 database. In that brief, the father argued that the record of the juvenile court's proceedings was inadequate for appellate review in this court and, therefore, that the appeal should be to the circuit court. Attached to that "brief on notice of appeal filing" was a copy of the June 16, 2016, notice of appeal.
The juvenile court entered an order on June 22, 2016, noting that the father had filed the notice of appeal to the circuit court, which it noted was the incorrect forum, and finding that the father's assertion that there was an inadequate record was premature.[2] Apparently in response to the June 22, 2016, order, the father amended his notice of appeal on June 23, 2016, on a form designating that the appeal be to this court.
On July 7, 2016, the mother filed a notice of appeal. The parties have incorrectly referred to the mother's notice of appeal as a "cross-appeal." See Black's Law Dictionary 117 (10th ed. 2014) (defining "cross-appeal" as "[a]n appeal by the appellee").
As an initial matter, we must determine whether this court has jurisdiction over the mother's appeal.[3] In the absence of a timely postjudgment motion, the parties had 14 days, or until June 28, 2016, to file a timely appeal of the juvenile court's June 14, 2016, judgment. See Rule 4(a)(1)(E), Ala. R. App. P. The father timely appealed on June 16, 2016. Rule 4(a)(2), Ala. R. App. P., provides that if a party files a timely notice of appeal, "any other party may file a notice of appeal within 14 days (2 weeks) of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this rule, whichever period last expires." Thus, after the father filed his timely notice of appeal, Rule 4(a)(2) operated to afford the mother additional time to file a timely notice of appeal of the June 14, 2016, judgment. W.F. v. State Dep't of Human Res., 704 So.2d 483, 485 n. 1 (Ala. Civ. App. 1997). Instead of being required to appeal by June 28, 2016, which was 14 days following the entry of the June 14, 2016, judgment, the mother had until June 30, 2016, which was 14 days after the father filed his timely, June 16, 2016, notice of appeal, to timely appeal the judgment.
Under the facts of this case, June 30, 2016, constituted the last date, under Rule 4(a)(2), on which the mother could timely appeal. The mother's July 7, 2016, notice of appeal was filed in excess of 14 days after the filing of the father's June 16, 2016, notice of appeal. In her response to this court's request for argument on the issue of the timeliness of her appeal, (see note 3, supra), the mother addressed only the father's June 23, 2016, notice of appeal, which amended his original notice of appeal to reflect that the appeal was to this court. The father's June 16, 2016, notice of appeal indicated that the appeal was to the circuit court because, he argued, the record on appeal was not adequate for review by this court under Rule 28, Ala. R. Juv. P. The juvenile court (see note 2, supra) and this court (see note 3, supra) disagreed that the record on appeal was inadequate; therefore, the father's notice of appeal should have indicated that the appeal was *412 to this court. Rule 28, Ala. R. Juv. P. If an appeal is in the wrong court, the court will transfer the appeal to the correct court, even ex mero motu. See Rule 3(c), Ala. R. App. P. ("If the notice of appeal names the wrong appellate court to which the appeal is taken, such designation shall be treated as a clerical mistake and corrected accordingly. The necessary clerical steps shall be taken to docket the appeal and to file the record and briefs in the appropriate appellate court."); Rule 28(D), Ala. R. Juv. P. ("An appellate court or circuit court may transfer an appeal to another court if it determines that the appeal should be transferred to or should have been brought in that court."); Jenkins v. Covington, 939 So.2d 31, 33 (Ala. Civ. App. 2006) ; W.E.C. v. Madison Cty. Dep't of Human Res., 909 So.2d 849, 850 (Ala. Civ. App. 2005) ; and D.K.G. v. J.H., 627 So.2d 935, 936 (Ala. Civ. App. 1992) ; see also R.H. v. J.H., 778 So.2d 839, 841 (Ala. Civ. App. 2000) (the notice of appeal divested the juvenile court of jurisdiction). Thus, regardless of the fact that the father initially appealed to the circuit court instead of to this court, because the record has been deemed adequate, this court has jurisdiction over the appeal and the appeal is appropriately before this court; conversely, if the record on appeal had been deemed inadequate, the appeal would have been transferred to the circuit court. Rule 28(D), Ala. R. Juv. P.; D.K.G. v. J.H., supra ; Jenkins v. Covington, supra. The father's June 23, 2016, amended notice of appeal was not necessary and was not effective to toll any period for allowing the mother to timely appeal.
On application for rehearing in case no. 2160790, the mother argues that her notice of appeal was timely filed because, she argues, the father's June 16, 2016, notice of appeal was not accepted by the juvenile court clerk. The mother argues that the June 16, 2016, notice of appeal is not set forth in the record except as an exhibit to the father's June 21, 2016, "brief on notice of appeal filing." That notice of appeal, however, is date-stamped as having been filed in the clerk's office. The mother does not explain her contention that, despite that date stamp indicating that the notice of appeal was filed in the juvenile court, that court did not accept the filing. The mother contends in her brief on application for rehearing that "counsel for [the father] walked out of the courthouse with his attempted notice of appeal after the juvenile intake officer refused to accept it." There is nothing in the record to support that contention, neither party made such an allegation in response to this court's order requesting briefing on the timeliness of the mother's appeal, and the mother has not submitted any affidavits or statements from the clerk in support of her application for rehearing that might lend support to her allegation that the juvenile court did not accept the father's June 16, 2016, notice of appeal.
The mother points out that the case-action summary for the action does not list the father's June 16, 2016, notice of appeal. The case-action summary does contain an entry indicating that the father's "brief on appeal" was filed, as well as an entry for the juvenile court's June 22, 2016, order on "brief on appeal," as it is identified on the case-action summary. In that June 22, 2016, order, the juvenile court stated, among other things, that "the father ... has filed an appeal."[4] Thus, the *413 record clearly indicates that, regardless of any purported mistakes by the clerk's office in failing to make a notation on the case-action summary of the June 16, 2016, notice of appeal, that notice of appeal was filed in the juvenile court. The mother cites Rule 3(d), Ala. R. App. P., which requires the juvenile court to serve a copy of the notice of appeal on the appellate court and the parties, and she asserts that no such service was accomplished in this case. Although we agree that the clerk's office should be diligent in properly maintaining the case-action summary and in properly serving the parties, the mother has not identified any law indicating that the clerk's omission of an entry of a filing on the case-action summary affects the jurisdictional significance of the actual filing of a notice of appeal, especially given the father's brief discussing the June 16, 2016, notice of appeal and the juvenile court's June 22, 2016, order. In fact, the Committee Comments to Rule 3, Ala. R. App. P., provide that the "[t]imely filing of the notice of appeal is a jurisdictional act. It is the only step in the appellate process which is jurisdictional."
"The only jurisdictional prerequisite for an appeal is the timely filing of a notice of appeal. Edmondson v. Blakey, 341 So.2d 481, 484 (Ala. 1976) ; see also Committee Comments to Rule 3, Ala. R. App. P. ('Timely filing of the notice of appeal is a jurisdictional act. It is the only step in the appellate process which is jurisdictional.'). The Alabama Rules of Appellate Procedure were not 'designed to catch the unwary on technicalities.' Edmondson, 341 So.2d at 484. Accordingly, absent a showing that the alleged defect in a notice of appeal prejudiced the adverse party, an appeal will not be dismissed on the basis of that defect. See Wemett v. State, 536 So.2d 349, 350 (Fla. Dist. Ct. App. 1988) ('a defect in a notice of appeal that does not prejudice the adverse party will not serve as grounds for dismissal')."
Dunning v. New England Life Ins. Co., 890 So.2d 92, 96 (Ala. 2003). The mother has made no allegation that she was unaware of the June 16, 2016, notice of appeal and no showing that she was prejudiced (i.e., that she was unaware of the June 16, 2016, notice of appeal) by any failures on the part of the juvenile-court clerk to comply with rules governing the handling of a notice of appeal.
As noted earlier, the record indicates that the father filed a timely notice of appeal on June 16, 2016. The mother had until June 30, 2016, due to an extension pursuant to Rule 4(a)(2), to timely appeal. The mother's July 7, 2016, notice of appeal was not timely filed. Therefore, this court lacks jurisdiction over her appeal, and we dismiss the mother's appeal. M.M. v. L.L., 989 So.2d 528, 530 (Ala. Civ. App. 2007).
The record indicates that before the maternal grandparents initiated this dependency action, DHR had filed, on March 17, 2015, dependency petitions pertaining to the child and the half sibling. In those petitions, DHR alleged that the father had sexually abused the child, who was 11 at that time. We note that the dependency actions initiated by DHR pertaining to the children were consolidated in the juvenile court; we hereinafter refer to the action initiated by DHR pertaining to the child as "the .01 action." There is no indication in the record that any party sought to consolidate those actions with the dependency action regarding the child that was initiated by the maternal grandparents, and *414 the record contains no order consolidating the .01 action with the dependency action underlying this appeal.
On April 10, 2015, the juvenile court entered an order in the .01 action (as well as in the dependency action pertaining to the half sibling initiated by DHR) in which it awarded pendente lite legal and physical custody of the half sibling to the parents, awarded pendente lite legal custody of the child to the parents, but awarded pendente lite physical custody of the child to the maternal grandmother. That order specified that, although the child and her half sibling would be allowed to visit each other, the father was to have no contact with the child.
The maternal grandparents initiated their dependency action pertaining to the child (hereinafter sometimes referred to as "the .02 action") on April 23, 2015.
On June 4, 2015, the juvenile court entered in the .01 action another pendente lite order that was substantively the same as its earlier, April 10, 2015, order. The record indicates that that order was entered on the State Judicial Information System in the .02 action, although the style of the order indicates that it was applicable to the .01 action.
On August 18, 2015, the maternal grandmother filed an "amended petition" to have the child declared dependent; that petition was styled as being applicable to the .01 action, but it was filed in the .02 action. The maternal grandparents later moved for a continuance of a scheduled hearing in the .01 action. It is clear that the parties and the juvenile court occasionally intermingled the case numbers in the two pending dependency actions pertaining to the child. It appears that the parties did not continue to allege that the half sibling, who remained in the custody of his parents, was dependent.
On December 14, 2015, the juvenile court entered an order in the .01 action in which it found the child to be dependent based on an "agreement of the parties" and awarded custody of the child to the maternal grandparents. In that order, the juvenile court specifically referred to the action in which that order was entered as being the dependency action initiated by DHR and stated that it had been entered following a "final hearing," although the juvenile court specified that the custody award was effective pending further orders of the court. No similar order was entered in the .02 action initiated by the maternal grandparents.
On January 7, 2016, the father filed in the .01 action a motion pursuant to Rule 60(b), Ala. R. Civ. P., in which he alleged that the juvenile court's December 14, 2015, order was based on a "factual mistake" because, he said, he was not present at the conference or hearing at which the other parties agreed that the child was dependent and that he did not agree that the child was dependent. The father also argued that no evidence had been presented as to the issue of the child's dependency. The father also filed a motion seeking visitation with the child, and he later, on March 17, 2016, amended his Rule 60(b) motion in the .01 action. There is no indication that the juvenile court ruled on that pending Rule 60(b) motion in the .01 action.
On April 19, 2016, the juvenile court entered an order in the .02 action after conducting an ore tenus hearing. In that April 19, 2016, order, the juvenile court found the child to be dependent, and, among other things, it stated that "[p]rior motions concerning dependency are moot." We note that, in his appellate brief, the father alleges that that April 19, 2016, order, by referencing earlier dependency motions, was a denial of his Rule 60(b)
*415 motion filed in the .01 action.[5] In that order, the juvenile court also denied a request by the father for visitation with the child based on a determination that such visitation would not be in the child's best interests. As noted earlier, the juvenile court entered a judgment in the .02 action on June 14, 2016, in which it again found the child to be dependent and awarded custody of the child to the maternal grandparents.
The father lists as his first argument on appeal the contention that the juvenile court deprived him of his due-process rights throughout the pendency of the dependency litigation. We note that the father has appealed only in the .02 dependency action initiated by the maternal grandparents. There is no indication that the juvenile court entered a judgment in the .01 action initiated by DHR at the same time, or approximately the same time, as the entry of the June 14, 2016, judgment in the underlying action, such that an appeal of any order entered in that action would be timely.
As part of his due-process argument, the father first contends that the juvenile court erred in awarding pendente lite custody of the child to the maternal grandmother in its April 10, 2015, pendente lite order entered in the .01 action because, he says, no evidence was presented to the juvenile court before it entered that order. We note that, in entering that pendente lite order, the juvenile court stated that it had based the order on an agreement of the parties. The father did not timely seek appellate review of that pendente lite order, which was entered in the .01 action and which was entered before the .02 action that forms the basis of this appeal was initiated.
The father also contends that the juvenile court erred in failing to allow him to attend a December 7, 2015, in camera meeting among the other parties and their attorneys and in entering an order on December 14, 2015, finding the child to be dependent based on the "agreement of the parties." The father asserts that he would not have agreed, and did not agree, that the child was dependent. Although the parties and the juvenile court appear to have intermingled some pleadings, motions, and orders between the two dependency actions, as discussed, supra, that December 14, 2015, order was specifically entered with regard to DHR's dependency petition in the .01 action, and it was not entered in the .02 action from which this appeal arises. Even assuming that this court could consider an argument pertaining to an order entered in the .01 action, the father cannot prevail on this argument. This court need not determine whether the December 14, 2015, order entered in the .01 action was sufficiently final to support an appeal. See, e.g., Ex parte T.C., 96 So.3d 123, 129-30 (Ala. 2012) (an order finding a child dependent, without making a custody determination, is not sufficiently final to support an appeal). If that order was final (and if this court could consider it), the father's notice of appeal was filed well outside the 14 days allowed by Rule 4(a)(1), Ala. R. App. P. Also, if the order was not final, this court could not review it on appeal because a pendente lite order is not made final by the entry of a final judgment but, rather, is replaced by the final judgment. Morgan v. Morgan, 183 So.3d 945, 966 (Ala. Civ. App. 2014) ; see also Ex parte J.P., 641 So.2d 276, 278 (Ala. 1994) ("Pendente lite orders are generally entered only during the pendency of the litigation and are usually replaced by a final order or judgment that is entered at *416 the end of the litigation."). Thus, even assuming that this court could consider an order or judgment entered in the .01 action in this appeal of a judgment entered in the .02 action, we could not reach the orders with which the father takes issue in his brief on appeal.
The father also contends that the juvenile court "refused to correct the record" in entering its April 19, 2016, order and the June 14, 2016, judgment to reflect that the issue of whether the father had agreed that the child was dependent at the time of the entry of the April 10, 2015, order was not moot. The juvenile court found, in its April 19, 2016, order in this action, that "[p]rior motions concerning dependency are moot." The father cites no authority to support his argument, in contravention of Rule 28, Ala. R. App. P. Further, this court could not reach an argument pertaining to the April 19, 2016, pendente lite order as a part of this appeal of the June 14, 2016, final judgment. Rule 4(a)(1), Ala. R. App. P.; Morgan v. Morgan, supra.
The father next argues that the juvenile court erred in refusing to allow him to present evidence in opposition to the maternal grandparents' evidence on the issue of the dependency of the child during an April 18, 2016, hearing. The juvenile court briefly considered the father's argument that the hearing should continue so that the father could present evidence to rebut the evidence on the issue of the child's dependency. However, the juvenile court agreed with the argument presented by the mother's attorney that the parties were before the court on a motion alleging that there was no evidence of dependency, that evidence in support of that allegation had been presented, and that a hearing on the merits would be conducted at a later date. The juvenile court then entered its April 19, 2016, order finding the child to be dependent. Assuming, without deciding, that the April 19, 2016, order was sufficiently final to support an appeal, the father's failure to file such an appeal precludes review of that order in this appeal. W.P. v. Baldwin Cty. Dep't of Human Res., 208 So.3d 30, 32 (Ala. Civ. App. 2016) ; E.D. v. Madison Cty. Dep't of Human Res., 68 So.3d 163, 167 (Ala. Civ. App. 2010) (plurality opinion). On the other hand, assuming that the April 19, 2016, order was not sufficiently final to support an appeal, that order was replaced by the June 14, 2016, final judgment in this action. Morgan v. Morgan, supra. Thus, the father cannot obtain review of that decision in this appeal.
The father also argues that, based on the arguments above, the juvenile court improperly relied on those earlier dependency findings to again find the child dependent. This argument appears to reference the dependency determination in the juvenile court's June 14, 2016, judgment. The father appears to argue that the juvenile court could not rely on its earlier dependency determinations in its June 14, 2016, judgment. The father cites D.D.P. v. D.M.B., 173 So.3d 1, 4 (Ala. Civ. App. 2015), in which this court held that,
"[u]nder the particular circumstances of this case, in which the dependency of the child was initially determined in April 2010 and the juvenile court expressly declined to consider the issue of dependency in the January 2013 hearing by limiting the scope of that hearing solely to dispositional matters, we must conclude that the mother's constitutional rights to due process were violated."
(Emphasis added.)
The facts of this case are not like those of D.D.P. v. D.M.B., supra, where the juvenile court refused to consider the issue of dependency. Rather, in this case, the juvenile court received evidence on the *417 issue of the child's dependency in the final, ore tenus hearing that resulted in its June 14, 2016, judgment. In that judgment, the juvenile court did refer to its earlier dependency determinations, but it also specified that the child "remains" dependent. In his brief on appeal, the father has not asserted an argument that the evidence did not support that part of the June 14, 2016, judgment in which the juvenile court found the child to still be dependent. It is not the function of the appellate courts to develop, research, and support an appellant's arguments. Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala. 2007) ; Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. 2003). Accordingly, we do not reach the issue of whether the evidence supported the juvenile court's dependency determination.
The father also argues that the record on appeal is inadequate for review. The father argues that certain portions of a transcript were designated as "inaudible" and that two transcripts of bench conferences were not recorded or transcribed. He cites W.E.C. v. Madison County Department of Human Resources, supra, in which this court, ex mero motu, determined that the juvenile court had erred in certifying the record on appeal as adequate and transferred the action to the circuit court for a trial de novo.
In this case, the father asserted his arguments concerning the adequacy of the record in several motions filed in this court. This court allowed the supplementation of the record to add certain materials the father alleged should be included in the record on appeal. On January 10, 2017, this court entered an order stating that the issue of the adequacy of the record on appeal would be considered when the appeal was submitted to this court. After the entry of that order, on January 16, 2017, the father filed another motion concerning the adequacy of the record and requesting that this court stay briefing until the issue of the adequacy of the record on appeal was determined. This court stayed briefing and examined the record. On February 15, 2017, this court entered an order concluding that the record on appeal was adequate. The father sought no further review of this court's ruling on that issue, and he does not reference this court's February 15, 2017, order in his appellant's brief.
As indicated earlier, the father does not, in his brief submitted to this court, argue that the juvenile court erred in determining that the child is dependent. He also does not challenge on appeal the award of custody of the child to the maternal grandparents. Accordingly, any arguments as to those issues are waived. Edosomwan ex rel. Edosomwan v. A.B.C. Daycare & Kindergarten, Inc., 32 So.3d 591, 593 (Ala. Civ. App. 2009) ; see also Jimmy Day Plumbing & Heating, Inc. v. Smith, supra ; Butler v. Town of Argo, supra.
Rather, the father argues that the juvenile court erred in entirely terminating his visitation with the child. He argues that the evidence does not support an indefinite suspension of his rights to visit the child. In its June 14, 2016, judgment awarding custody of the child to the maternal grandparents, the juvenile court found, among other things:
"The child has previously been found dependent, remains dependent and an order has been previously entered. The Court heard testimony and considered exhibits ore tenus including the testimony of the minor child, which included allegations of abuse by the father. The child was interviewed by Child Protect and others concerning sexual abuse and problems in the home and [sic] believed the child finding her to be consistent. Evidence showed the mother did not *418 believe the child and both the father and mother felt the child was lying about these allegations, feeling [the child] could not distinguish dreams from reality. In addition, they believed the child should be returned to them because the case was no billed by a grand jury. The guardian ad litem entered his recommendation for custody to be placed with the [maternal grandparents] on the record."
Because the father has not challenged the determination of the child's dependency on appeal, we do not discuss in great detail the specifics of the evidence presented to the juvenile court. Rather, we set forth a brief recitation of the evidence pertinent to the issue of the father's visitation. The record indicates the following pertinent facts.
The maternal grandmother testified that on December 23, 2014, the 11-year-old child informed the maternal grandmother's teenaged son that the father had sexually abused her. At the teenager's instruction, the child repeated that allegation to the maternal grandmother. The maternal grandmother testified that the mother did not believe the child's allegations of abuse.
At the initial hearing, Terry Anderson, a DHR investigator, explained that, after the child reported the abuse, the child was placed with the maternal grandmother with the agreement of the mother and that DHR initiated an action to supervise the matter. DHR offered services such as counseling for the child, psychological evaluations for the parents, and supervised visitation. According to Anderson, DHR's position has remained that the child's report was credible and that it was not in her best interests to be placed in the parents' home with the father. Anderson also stated that DHR had determined that, based on several factors, including the child's gender, the half sibling was not as much at risk in being returned to the parents' home and custody and that DHR continued to check on the half sibling after his return to the parents' home. Anderson testified that if the juvenile court ordered the child to be placed in the parents' home, DHR would file a motion for a pickup order. Elizabeth Joyce, another DHR social worker, testified that she believed the child's allegations and does not think that it is in the child's best interests to be placed in the parents' home. Joyce also stated that if the child were returned to the parents' home, DHR would file an action seeking an award of custody of the child.
At the May 16, 2016, hearing, the maternal grandmother testified that, on the same night that the child made the abuse allegations, the mother told the child that "it was just a dream" and that the mother tried to convince the child that the abuse had not occurred. A great deal of testimony focused on the fact that, after making the abuse allegations on December 23, 2014, the child wanted to return to the parents' home on December 24, 2014, to celebrate Christmas. The maternal grandmother said that the child told her on one occasion that the alleged abuse had not occurred and that it had been a dream she had, but, the maternal grandmother also stated, the child later said it was not a dream. The maternal grandmother testified that the mother had suggested to the child that the abuse was a dream, but the mother denied that allegation and said that the child had stated that on her own. The maternal grandmother also testified that the mother had telephoned the child, on either December 23, 2014, or December 24, 2014, to tell the child that a beloved pet was sick and that, for that reason, the child wanted to return to the mother's home; the mother denied that allegation as well. The child asked to return to the *419 maternal grandmother's home on December 25, 2014, and she has remained there since that time.
The parents each insisted that the child has hallucinations. The father stated that the child had had hallucinations "many times" and cited the child's supposedly seeing a ghost, red-eyed dogs, and floating people as examples. He stated that, approximately one month before the child made the abuse allegations, the family had watched a disturbing horror movie in which a child was haunted by a ghost and had been abused; the father seemed to attribute the abuse allegations to the child's having seen that movie.
The child testified that, on one occasion, she went to the emergency room with the mother and told a doctor there that she had seen ghosts, that she had seen people float, and that she had seen red-eyed dogs. The child stated that she had seen movies of all three things and that they had "gotten stuck" in her mind. When asked why she reported those things to the doctor, the child stated that "my mama convinced me, oh, it would be fun to go in an insane asylum." Jamie Hill, who became the child's counselor in September 2015, testified that the maternal grandmother had reported that the mother had tried to have the child admitted to a mental-health facility for seeing things but that the maternal grandmother had believed that the child's claims of hallucinations were based on an incident in which the family told "spooky" stories.
Both parents also testified that the child lied extensively and that the child had a hard time separating truth from reality. The mother testified that the child once accused her of using drugs and leaving her and the half sibling alone; she then stated that she had been taking medications, including injections, for her migraine headaches. The mother's attorney presented recordings of telephone calls of the mother speaking with the child in which the child had told some lies.
The maternal grandmother admitted that she had stated in a letter that was intended to go to DHR that the child had a history of lying, so she questioned the child several times about the veracity of the abuse allegations. The maternal grandmother testified that she believed the child and that the abuse allegations have remained consistent.
Anderson and Joyce each testified that they had heard that the child had a reputation for lying but that that had not made them disbelieve the child about the abuse allegations; Anderson explained that the child's reports about the alleged abuse had remained consistent. The child testified, relating the same allegations of abuse that she had to the DHR social workers and her counselor. The child admitted to telling some lies and tried to explain them as attempts at manipulation. She continued to insist, however, that the alleged abuse had occurred.
Joyce, the ongoing protective-services social worker, testified that the child's initial counselor who retired shortly after beginning sessions with the child, recommended that the child not visit either parent. Joyce explained that Hill, who, as noted earlier, became the child's counselor in September 2015, and a Ms. Dilan, who conducted psychological evaluations of the parents, also recommended against visitation with the parents. Hill testified that she would not recommend placing the child in the parents' home and that she recommended that the child not visit the father until she is an adult and can make the decision for herself whether to see him. Hill also stated that she believed the child should have only supervised visits with the mother. Hill stated that she had not talked with the child about the child's having *420 possibly heard or seen things that were not real.
The child's testimony concerning the alleged abuse was consistent with her earlier reports. In addition to the allegations of sexual abuse, the child also testified that the father sometimes kicked or hit the family's animals and that he was verbally and sometimes physically abusive to the mother and the child. Hill testified that the child reported those allegations to her.
The father testified and denied all of the child's abuse allegations. The father stated that the police investigated the child's allegations but that the criminal case was "no-billed."
The father submitted to a psychological evaluation that was referenced in the questioning of the father during the hearing on the merits. The father testified that, in addition to conducting a written evaluation, the psychologist had asked him only five questions. The father denied telling the psychologist that he had post-traumatic stress disorder or borderline-personality disorder, denied telling her that he had been subjected to abuse as a child, and denied telling her that his brother had cut the father's throat in 2008; he further denied that any such statements were true. The father admitted that he had had several concussions from head injuries and that he had some memory problems. In questioning the father, the juvenile court noted that the psychological-exam report contained very specific information about the father, and it questioned the father about how the psychologist obtained that information; the father responded that he did not know and that he had not provided that information.
In denying visitation to the father, the juvenile court further found in its June 14, 2016, judgment:
"This Court heard testimony regarding the father ... and observed his demeanor. Testimony concerned several instances of sexual abuse upon the minor child along with other instances of abuse in the household. The father submitted to a psychological test which was entered into the record, wherein, throughout it stated '[The father] reported....' The information reported was not favorable to [the father], and during testimony, the father denied saying numerous items in the report but could not explain how the psychologist got such information. In regards to the grand jury, [the father] stated he had only talked on the phone with an investigator in Jefferson County. No concrete information was ever provided to this Court as to what was or was not considered by the grand jury concerning the case against the father. Lastly, the child's testimony and the consistency of statements throughout the case to therapists, DHR, and Child Protect reveal detailed information of several instances of inappropriate contact by the father with the child. Based on the evidence provided, it does not appear to this Court visitation or contact is in the best interest of the child with the father."
In arguing that the juvenile court erred in denying him visitation with the child, the father contends that the courts should take a "strict view on a complete bar" of visitation between a parent and a child. The father cites M.R.D. v. T.D., 989 So.2d 1111, 1114 (Ala. Civ. App. 2008), which provides:
"In light of the strong public policy favoring visitation, however, in cases where a final judgment (as opposed to a pendente lite order) indefinitely divesting a parent of all visitation rights is entered, that judgment should be based on evidence that would lead the trial court to be reasonably certain that the termination of visitation is essential to *421 protect the child's best interests. Thus, notwithstanding the discretionary role of our learned trial judges, this court will continue to carefully scrutinize judgments divesting parents of all visitation rights with their children. See In re Norwood, 445 So.2d 301, 303 (Ala. Civ. App. 1984) (reversing judgment denying all visitation to child's mother); Naylor [v. Oden ], 415 So.2d [1118,] 1120 [ (Ala. Civ. App. 1982) ] (reversing judgment denying all visitation to child's mother and stating that 'the rights of natural parents, in visitation disputes as much as custody disputes, should be treated with great deference'); V.C. v. C.T., 976 So.2d 465, 469 (Ala. Civ. App. 2007) (main opinion indicating that 'a total denial of visitation rights has been upheld only rarely')."
We note that M.R.D. v. T.D., supra, involved a custody dispute between divorcing parents in which allegations arose that the father had sexually abused the four-year-old child. In that case, one expert witness stated that he could not definitively state, based on the statements made by the child, that the abuse had occurred. After reviewing the evidence, this court determined that the denial of visitation was "overly restrictive," and this court reversed the judgment. M.R.D. v. T.D., 989 So.2d at 1118.
Although the courts carefully scrutinize the denial of all visitation between a parent and a child, in this case, unlike in M.R.D. v. T.D., supra, the child has been found to be dependent, and the father did not appeal that determination.
"Alabama law authorizes a juvenile court to suspend a parent's visitation with a dependent child under appropriate circumstances. Section 12-15-314(a)(4), Ala. Code 1975, allows a juvenile court, in determining the disposition of a dependent child, to '[m]ake any other order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the [dependent] child.' It is well settled that a trier of fact has broad discretion to determine a parent's right to visitation with a dependent child and that the best interests and welfare of the child is the primary consideration in determining whether to award visitation and, if so, the extent of that visitation. Minchew v. Mobile County Dep't of Human Res., 504 So.2d 310, 311 (Ala. Civ. App. 1987) ; K.B. v. Cleburne County Dep't of Human Res., 897 So.2d [379,] 387-88 [ (Ala. Civ. App. 2004) ] ; J.P. v. S.S., 989 So.2d 591, 601-02 (Ala. Civ. App. 2008) ; P.Y. v. State Dep't of Human Res., 634 So.2d 1021, 1022-23 (Ala. Civ. App. 1994) ; and Heup v. State Dep't of Human Res., 522 So.2d 295 (Ala. Civ. App. 1988)."
Y.N. v. Jefferson Cty. Dep't of Human Res., 67 So.3d 76, 82 (Ala. Civ. App. 2011).
In this case, the psychologist and DHR social workers each recommended that the child not visit with the father. In arguing that the evidence did not support a denial of visitation, the father, in essence, contends that the child's abuse allegations are not credible and cannot serve as a basis for denying him visitation.[6] The father cites the facts that he was not indicted by the grand jury on child-abuse charges, that the child's half sibling was returned to the parents' custody, and that the child has a history of lying and hallucinations. As the juvenile court noted in its judgment, it is not clear what evidence might have been presented to the grand jury; the father *422 claimed that he spoke with law-enforcement officials only twice, and those conversations occurred over the telephone. DHR social workers also explained that, given the specific facts of this case, and because the half sibling is a boy, and is the father's natural, rather than adopted, child, they did not believe that placing him in the home constituted a threat to that child.
The evidence concerning the child's history of lying and possible history of hallucinations is a matter of concern. However, although the maternal grandmother, the social workers, and the child's counselor each acknowledged the issues of lying and possible hallucinations, each testified that she believed the child's abuse allegations and each noted that the child's allegations had remained consistent over time. The record demonstrates that the parties' attorneys thoroughly addressed all of the issues that might impact the child's credibility and that the juvenile court sought clarification of some issues by questioning some of the witnesses itself. "These proceedings were conducted before the trial judge, who is charged with the duty and responsibility of resolving disputed issues of fact by weighing the evidence and, when appropriate, assessing the credibility of the witnesses. An appellate court defers to the findings of the trial court on such matters." S.S. v. Calhoun Cty. Dep't of Human Res., 212 So.3d 940, 951 (Ala. Civ. App. 2016).
"The juvenile court was in the best position to observe the witnesses while they testified and to evaluate their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). 'Moreover, "[b]ecause the trial court has the advantage of observing the witnesses' demeanor and has a superior opportunity to assess their credibility, [an appellate court] cannot alter the trial court's judgment unless it is so unsupported by the evidence as to be clearly and palpably wrong." ' Ex parte Fann, 810 So.2d [631,] 636 [ (Ala. 2001) ] (quoting Ex parte D.W.W., 717 So.2d 793, 795 (Ala. 1998) ). 'The trial court, as the finder of fact, is required to resolve conflicts in the evidence.' Ethridge v. Wright, 688 So.2d 818, 820 (Ala. Civ. App. 1996).
" ' "[The appellate court is not] allowed to reweigh the evidence in this case. This case ... turns on the trial court's perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses ... and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence...." '
" Ex parte Patronas, 693 So.2d 473, 475 (Ala. 1997) (quoting Ex parte Bryowsky, 676 So.2d [1322,] 1326 [ (Ala. 1996) ] )."
D.M. v. Walker Cty. Dep't of Human Res., 919 So.2d 1197, 1214 (Ala. Civ. App. 2005).
We also note that the juvenile court might have questioned the father's credibility. See, e.g., Bunn v. Bunn, 628 So.2d 695, 697 (Ala. Civ. App. 1993) ("In determining the weight to be accorded testimony, the trial court, as sole judge of the credibility of witnesses, considers the demeanor and apparent candor or evasiveness of the witnesses, and the trial court may disbelieve and disregard portions of testimony and should accept only that testimony it considers worthy of belief."). The father denied that he provided most of the information used in the report of his psychological evaluation. In questioning the father on that issue, the juvenile court noted that the report contained a great deal of very detailed information. We note that, although the juvenile court stated in its judgment that the father's psychological evaluation had been entered into evidence, no party offered or submitted that psychological evaluation into evidence, and, therefore, it is not included in the record *423 on appeal. The father has not argued that the juvenile court erred in considering that psychological evaluation, and, therefore, any argument on that issue is waived. Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982).[7]
The evidence in the record was in conflict as to whether the alleged abuse occurred. It is clear from the juvenile court's judgment that the juvenile court believed the child's abuse allegations. It is undisputed that the psychologist and DHR witnesses recommended against requiring the child to visit the father. The juvenile court found that such visitation would not be in the child's best interests. Y.N. v. Jefferson Cty. Dep't of Human Res., supra. Given the deference afforded a juvenile court based on its hearing and considering ore tenus evidence, see B.S.L. v. S.E., 875 So.2d 1215, 1217 (Ala. Civ. App. 2003), we cannot say that the father has demonstrated that the juvenile court erred in denying him visitation with the child.
2150815-OPINION OF JULY 21, 2017, WITHDRAWN ON APPLICATION FOR REHEARING IN CASE NO. 2160790; OPINION SUBSTITUTED; AFFIRMED.
2160790-APPLICATION FOR REHEARING OVERRULED; OPINION OF JULY 21, 2017, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED.
Pittman, Thomas, and Donaldson, JJ., concur.
Moore, J., concurs in the result, without writing.

The record indicates that the child was born of the mother's relationship that occurred before the mother began her relationship with the father. The father adopted the child, and the half sibling was later born of the mother and father's marriage.

The record contains an October 7, 2016, order of the juvenile court certifying the record as adequate for appeal.

We note that, in addressing motions filed in this court by the father, which were joined by the mother, in which it was argued that the record on appeal was not adequate, this court entered an order on February 15, 2017, determining that the record was adequate. As a part of that February 15, 2017, order, this court also directed the parties to brief the issue of the timeliness of the mother's appeal, referencing certain cases, discussed infra.

The June 22, 2016, order states, in its entirety:
"The trial of this matter was recorded by electronic means. The father, by and through counsel, has filed an appeal to Circuit Court (which is the incorrect form [sic] ) stating there were non verbal responses, therefore, an inadequate record. That premature assumption is a matter for this Court to determine, once the electronic recording has been transcribed and sent to the Court, which has not been done by counsel."

We make no determination as to the correctness of that argument.

We note that the father also briefly argues that, unlike in M.R.D. v. T.D., supra, the juvenile court in this case made no specific factual findings regarding whether the alleged sexual abuse occurred. The father makes no specific argument that a factual finding of abuse was required, and he cites no authority requiring such a factual finding.

We further note that, although the father filed several motions in which he contended that the record on appeal was not sufficient for review, the father's arguments were focused solely on the adequacy and availability of transcripts of various hearings in the .01 and the .02 actions. In his motions concerning the adequacy of the appellate record, the father made no argument that any exhibits were missing from the record on appeal.